STATE OF IOWA v. CLARENCE TEALE, Appellant.

**Jurors:** DISQUALIFICATION : JUDICIAL DISCRETION. The disqualification of a juror because of an opinion as to the guilt of defendant is a matter resting largely within the trial court's discretion. And where, as in this case, the juror stated that he had formed an opinion based upon what had been told him, which might be hard to lay aside, and might to some extent influence his verdict, but that he thought that he could try the case and render a verdict on the evidence alone there was no abuse of discretion in overruling a challenge to him; but although the court's action in overruling a challenge in such cases may be technically right it is better to give the defendant the benefit of the doubt if the juror discloses such a condition of mind as to render his qualification a fair question of doubt.

**Criminal law:** MURDER : EVIDENCE. In this prosecution for murder it was not prejudicial error for the court to exclude testimony that a third person had admitted killing the deceased when he had

himself testified to that fact, and when the jury evidently be-
lieved the state's eye witnesses who testified that the defendant
struck the fatal blow.

**Same:** EVIDENCE: EXHIBITS. Where the defendant, as in this case,
attempted to show that deceased was killed by a blow upon the
head at another place, and which inflicted an injury different
from that relied on by the state, it was proper to receive in evi-
dence the skull of deceased and for the jury to take the same
to the jury room, to aid in determining the exact location and
character of the wound which killed deceased.

**Same.** Where it was shown that accused struck decedent with a
club of the same general description as the one found where de-
fendant had been after the affray, the club so found was suffi-
ciently identified to permit its admission as an exhibit.

**Same:** INSTRUCTIONS: USE OF DEADLY WEAPON. Where the undis-
puted evidence showed that death resulted from the use of a
deadly weapon, an instruction that if a person make an assault
and death ensues, the presumption is warranted that he intended
to murder if there was no evidence to show that he intended
lesser injury, was not erroneous because omitting any reference
to the use of a deadly weapon.

**Same:** REFUSAL OF INSTRUCTIONS. The refusal of a requested instruc-
tion which is fully embodied in those given by the court is not
erroneous.

**Grand jurors:** DISQUALIFICATION. A grand juror is not necessarily
disqualified because he had formed an opinion as to the guilt or
innocence of defendant providing the facts which he had heard
were true, where he stated that such opinion would not prevent
him from rendering a true verdict on the evidence.

**Same:** VERDICT: PASSION AND PREJUDICE. Where the evidence is suffi-
cient to support a verdict of guilty and the record bears no
evidence that the jury was prejudiced against defendant himself,
although the facts detailed may have aroused the prejudice of
the jury against the crime itself, the verdict will not be dis-
turbed on the ground of passion and prejudice.

*Appeal from Decatur District Court.*—HON. THOMAS L.
MAXWELL, Judge.

WEDNESDAY, APRIL 3, 1912.

THE defendant was convicted of murder in the second degree, and appeals.—*Affirmed.*

*C. W. Hoffman* and *Marion Woodard,* for appellant.

*George Cosson,* Attorney-General and *John Fletcher,* Assistant Attorney-General, for the State.

SHERWIN, J.—The defendant, Clarence Teale, was jointly indicted with Thomas Young and others for the murder of Bertha Zornes in December, 1910. A separate trial was granted him, and as we understand the record, he was the first one of the several defendants tried.

The facts necessary to an understanding of the questions to be determined are substantially and briefly as follows: The murdered woman, with her husband, Levi Zornes, and their children, lived on a farm adjoining the farm upon which this defendant lived and Levi Zornes rented of this defendant two or three acres of his land. In the evening of the 7th day of December the deceased with her husband and three sons, Henry, eighteen years of age, Willie, thirteen years old, and Elzie, twelve years old, were at the family home on the farm. A daughter, eleven years of age, was at the time away from home. The Zornes had for supper that evening Thomas and Henry Phillips, their nephews, and both grown men, and Roy Young, a man twenty-nine years old, who is a brother of Thomas and Ed Young, who, with one Hugh Teale, were jointly indicted with this defendant, Clarence Teale, for this murder. The Zornes family and their supper guests remained at the house during the evening, and about 9 o'clock or a little thereafter this defendant, Clarence Teale, his brother, Hugh Teale, a man twenty-two years old, and Thomas and Ed Young, adults, called at the Zornes home and were admitted to the house, and they with the other guests and the family, except Mrs. Zornes, were in the same room; it being a south-

east room of the house with an outside door opening therefrom on the east, and a door in the southwest corner thereof opening into the southwest room of the house, which room had an outside door opening to the south. A room directly north of the living room, where these people were, was occupied as a bedroom, and, when this defendant and his friends arrived at the house, Mrs. Zornes was lying on one of the beds therein, but the door between the two rooms was open. The door between the two south rooms was in the southwest corner of the east room, and it was hung so that it swung to the east and south. At the time in question, a shotgun belonging to one of the Zornes boys stood behind this door, which was then open. Shortly after the Teales and Thomas and Ed Young entered the house, a controversy arose between this defendant and Mrs. Zornes as to who was the author of a report current in the neighborhood that a young woman had been cooking for the defendant; he accusing Mrs. Zornes of being its author, and she denying it. Intemperate language was applied to each other, which finally resulted in a request from both Mr. and Mrs. Zornes that the defendant and his party leave the house. Up to this point there is no substantial difference between the witnesses as to what took place in the house, but beyond this there is a marked conflict in the testimony. The witnesses for the state say that, when Mr. Zornes requested them to leave, Thomas Young said that Zornes could not put him out, and immediately struck Zornes on the head with a heavy bicycle pump, and knocked him down; that Young knocked Zornes down in the same way a second time, and then threw the pump at Mrs. Zornes, striking her in the face, and knocking her down. On the other hand, defendant's witnesses claim that Mrs. Zornes told her husband to get the shotgun and shoot the offending persons, and that while he was attempting to do so Thomas Young knocked Zornes down with the bicycle pump, that Mrs. Zornes then assumed a threatening attitude toward Thomas

Young, and that he then knocked her down with the pump. But the question as to who was the physical aggressor in the house is not of controlling importance in this case. For present purposes it is enough to say that, after being knocked down twice, Mr. Zornes, together with Henry Zornes and the Phillips men, were driven from the house through the southwest room, and that the conflict was renewed on the outside with Zornes and his · son, Henry. Mrs. Zornes and the two younger boys remained in the house until the others had gone outside, whereupon she, with these two boys, left the house by the east door, and started in a northwesterly direction therefrom. She was overtaken by the defendant, Clarence Teale, and by him struck on the side of the head with a club, and killed.

A trial juror called into the box stated in substance, in answer to the defendant's questions, that he had formed an opinion as to the guilt or innocence of the defendant,

1. JURORS: disqualification: judicial discretion.

based upon what had been told him about the matter, that it might be hard to lay the opinion aside, and that it might, to some extent, influence his verdict. A challenge was then interposed. The juror then stated in answer to questions by the judge that he thought that he could lay aside the opinion he already had and try the case on the evidence, and render a verdict on that alone, whereupon the defendant's challenge was overruled, and the ruling is assigned as error. In the examination of jurors as to their qualifiations to try a case, the sole question to be determined by the trial court is whether they can fairly and impartially hear the evidence, and render a verdict thereon which shall be entirely free from the aid or influence of previous knowledge or preconceived opinions. And in the very nature of the situation the trial court must be given discretion in such matters which will not be interfered with, unless an abuse of discretion be shown. *State v. Hassan,* 149 Iowa,

518; *State v. Bone,* 114 Iowa, 537; *State v. Brown,* 130 Iowa, 57.

A person is qualified to act as a juror when it is apparent from his entire examination that, notwithstanding his present knowledge of the facts or any opinion which he may have formed therefrom, he can try the case fairly and impartially on the evidence alone. *State v. Rohn,* 140 Iowa, 640; *State v. Ralston,* 139 Iowa, 44. In this case we think it apparent from the examination of the juror that he did not have such a fixed and unqualified opinion as to disqualify him. Under the rule of the cases *supra,* we think there was no error in overruling the challenge.

We are constrained to say in this connection, however, that we see no occasion in the ordinary administration of the criminal law in this state for the close rulings on the qualifications of jurors that are constantly brought to our attention. Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded. Confidence in the fairness and impartiality of each member of a jury, which shall be sworn to try a man on a charge involving his life or liberty, is of the greatest importance to the welfare of the state. Indeed, it is of such paramount importance to every citizen that the time and expense necessary to secure jurors as to whom no doubt may rightly exist is an insignificant consideration.

Thomas Young testified for the defendant that he was the one who struck Mrs. Zornes with the club out in the yard, and then the defendant offered to show by him that 2. CRIMINAL LAW: murder: evidence. he had made the same statement to one John Cecil. The court did not err to the defendant's prejudice in rejecting this offer. Young had already testified fully as to his part in the affray in the Zornes house and yard, and, if his statements were true,

the defendant could not be guilty of the crime charged against him. Several of the state's witnesses testified, however, that they saw the defendant, Clarence Teale, strike the fatal blow, and that Young was at that time engaged with Levi and Henry Zornes. It is clearly evident that the jury did not believe Young, and that his own testimony that he had told Cecil that he was the one who killed Mrs. Zornes would not have strengthened the defendant's case with the jury. Had the defendant offered to prove this alleged statement by witnesses other than Young, a different question would be presented. But, while Cecil was used by the defendant as a witness on another matter, he was not interrogated on this subject.

The left side of Mrs. Zornes' skull was fractured, and the state produced the upper part of the skull for the purpose of showing the jury the exact location and character

3. SAME: evidence: exhibits. of the blow that she had received. This was undoubtedly competent evidence, and it was not error to let the jury take the skull to the jury room. There was evidently an attempt to give the jury an impression that Mrs. Zornes' death resulted from the blow that she received in the face while she was in the house; hence it was of the utmost importance to the state to have the jury clearly understand the exact location and character of the wound that Mrs. Zornes received out in the yard. *State v. Novak*, 109 Iowa, 717.

There was a moon an hour or two high on the night in question, and the state's witnesses testified that the defendant struck Mrs. Zornes with a club, or board, about

4. SAME. three feet long. A club of this general description had been on the premises near the house for some time prior to this night, and the next day it was found some distance away at a point where the defendant, Clarence Teale, was shown to have been after the affray, and with a cap that one of the party wore the night

before. We think the club was sufficiently identified to admit it as an exhibit.

The court gave the following instruction:

The intent with which an act is done is an act or emotion of the mind seldom, if ever, capable of direct and positive proof, but it is to be arrived at by such just and and reasonable deductions or inferences from 5. SAME: instructions: use of deadly weapon. the acts and facts proved as the guarded judgment of a candid and cautious man would ordinarily draw therefrom. The law warrants the presumption, or inference, that a person intends the results or consequences to follow an act which he intentionally commits, which ordinarily do follow such acts. If a person make an assault on another and death ensues, the presumption is warranted that he intended to commit murder, if there is no evidence tending to show that he intended a lesser injury. If you find the defendant committed the assault, it will be your duty from the evidence to determine his intent in so doing by the surrounding circumstances and all the evidence in the case before you which tends to show the intent.

And defendant says that the last sentence of the second clause thereof is erroneous, because the court omitted reference to a dangerous and deadly weapon. But, read in the light of the undisputed evidence that the blow that killed Mrs. Zornes was struck with a deadly weapon, it was as specific as was necessary, for the jury could not fail to understand that it was to be applied to the evidence before it. The court instructed on the weight to be given to certain admissions claimed to have been made by the defendant and other witnesses outside of court different from what they had testified to as witnesses. The instruction was in line with similar ones that have been often approved by this court.

Complaint is made because the court did not submit to the jury a special instruction asked by the defendant, which was to the effect that he could not be convicted unless the

jury found, beyond a reasonable doubt, that he personally struck the blow that caused the death of Bertha Zornes. The subject of this request was fully covered by the instructions given, and hence there was no error in refusing it.

6. SAME: refusal of instructions.

The defendant challenged a grand juror on the ground that he had formed an unqualified opinion as to the guilt or innocence of the defendant, providing facts which he had heard were true. The final answer of the witness, however, was that he did not know that he had formed an opinion that would prevent him from rendering a true verdict on the evidence, and the challenge was thereupon overruled. What has already been said herein relative to the qualifications of the trial juror also disposes of this challenge to the grand juror, and it need not be repeated.

7. GRAND JUR-ORS: disqualification.

Finally, it is said that the verdict is the result of passion and prejudice, and that it is not sustained by the evidence. This is a case of great importance to both the defendant and the state, and we have given the record and the evidence very careful examination and consideration, and we are united in the opinion that the verdict is fully supported by the evidence. We cannot say as a matter of law that the jury was not warranted in believing the testimony of the state's witnesses that they saw the defendant, Clarence Teale, strike the blow that killed Mrs. Zornes. On the cold record they appear to be as worthy of belief as the defendant and his witnesses. The jury saw all of the witnesses and heard them testify, and the verdict in this case must be conclusive as to the facts. It was one of the most brutal murders that has ever been committed within this state, and it is not unlikely that the details of the transaction of that night may have aroused the prejudice of the jury against the crime itself. But the record bears no evidence that the jury was prejudiced

8. SAME: verdict: passion and prejudice.

against the defendant, or that he did not have a strictly fair and impartial trial. The judgment is therefore *affirmed.*