STATE OF IOWA, Appellee, v. ERNEST REED, Appellant.

DECEMBER 13, 1927.

REHEARING DENIED MARCH 17, 1928.

*R. J. Organ* and *William P. Welch,* for appellant.

*John Fletcher,* Attorney-general, and *Roy Havens,* County Attorney, for appellee.

MORLING, J.—I. Defendant's main reliance is on the overruling of his challenge to two jurors for cause, in that they had formed disqualifying opinions. The jurors were excused on  peremptory challenges, all of which were exhausted. The one whose opinion appears to have been most pronounced testified that he had formed an opinion on the assumption that what he had heard and read was true; that his opinion was qualified; that he would lay it aside, and expected to lay it aside, when he got evidence to change it, but not until then. He testified that he could decide the case solely upon the evidence and the court's instructions, lay aside all that he had heard, and would disregard any opinion which he had formed. The cause for challenge in this regard is:

"11. Having formed or expressed such an opinion as to the guilt or innocence of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial." Code of 1924, Section 13830.

The trial court was the trier of fact on the question of the existence of this ground of challenge. He must be, and is, invested with discretion in passing upon the question of disqualification for such reason. The testimony here is quite different than that presented in the former appeal, 201 Iowa 1352. There, the juror testified that he did not think that he could enter the trial of the case, knowing what he did about it, and still give the benefit of the presumption of innocence to the defendant. The court was within his province in overruling the challenge, and we ought not to interfere with his action.

*State v. Teale,* 154 Iowa 677; *State v. Krampe,* 161 Iowa 48, 52; *State v. Hassan,* 149 Iowa 518; *State v. Harding,* 205 Iowa 853.

... II. Defendant urges that there is no evidence of malice, deliberation, or premeditation, and that the charge of murder, whether first or second degree, should have been withdrawn from the consideration of the jury. Harry Reel was a special police officer, on duty at the fairgrounds in fair time. It is not disputed that the defendant fired three shots at him while so on duty, thereby killing him. Defendant had entered the fairgrounds by climbing over the fence. He was apprehended by deceased, and escorted back to the fence. After leaving defendant there, deceased took up his station some distance away. The testimony as to what happened from that time on is in irreconcilable conflict. There is evidence to the effect that defendant left the grounds by jumping over the fence, and later re-entered in the same manner. It does appear, without dispute, that, just before the shooting, defendant and another officer, Swanger, were having a conversation at the fence. Swanger testifies that he advised defendant to get a ticket, or to wait until 8:30, when he could enter without one. During this conversation, deceased approached, and directed defendant to leave. One witness testifies that defendant said, " 'You don't want to get hard with me,' and Reel said, 'You go on and go away from here, and stay out, and there won't be nothing hard about it.' "

"Q. Then what did Reed say? A. Well, he says, 'You go on, you * * * ' " (using an opprobrious epithet).

There is testimony that deceased then reached over the fence and struck defendant with his hand. There is also testimony from which the contrary might be found. There is testimony that, immediately upon being struck, defendant fired the fatal shots. There is also testimony that defendant said to deceased, if he wanted to fight, to come out in the road; that defendant said to Swanger:

... "If you tell me that, 'to get off the fairgrounds,' he says, 'I will go, but that * * * ' [applying the epithet], he says, 'I never will get off if he tells me,'—that is, Mr. Reel."

One witness says that defendant left the fence, and went around an automobile.

"I seen him make a motion,—two or three motions, up and

down his side,—but I didn't see no gun on him; and he come a little ways from that car, and stopped and stayed there quite a little bit; and the stranger says, 'Get her going;' and it wasn't but a little bit until the firing commenced; and after the third shot was fired, I seen Mr. Reel on the ground."

There is testimony that defendant's breath gave out, the odor of intoxicating liquor. There was sufficient evidence of malice, deliberation, and premeditation to go to the jury, and the court properly submitted the charge of murder both in the first and second degrees.

III. The court gave elaborate instructions, to few of which objections are made. Defendant made no requests to charge. The objections argued go to the failure of the court in the particular paragraphs objected to, to state the applicable qualifying rules; to failure to define trespass, assault, and assault and battery, as used in the instructions on the law of self-defense; to instructions referring to the use of a deadly weapon, as unduly emphasizing the fact that the defendant did use such weapon. A detailed statement of the instructions and objections to them would be of no useful purpose. The court did not, and was not required to, state all of the law relevant to the case in a single paragraph. The subjects of the alleged omitted qualifications were fully covered by other instructions. Assault as one of the included defenses was defined. The terms "assault," "assault and battery," and "trespass," as used in the statement of the law on the subject of justification, needed no interpretation or elaboration. They are words of well understood meaning in their general sense. It was in that sense that they were used, and, as said, no requests for further instructions were made. The argument on these objections is, to a large extent, hypercritical. The objections urged are without merit.

The defendant was given a fair trial. The evidence amply supports the verdict. The judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.