State of Iowa, Appellee, v. Walter H. Rhodes, Appellant.

No. 44129.

NOVEMBER 22, 1938.

OPINION ON REHEARING OCTOBER 26, 1939.

REHEARING DENIED FEBRUARY 9, 1940.

Will J. Hayek, for appellant.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, Harold W. Vestermark, County Attorney, and F. F. Messer, Special Assistant County Attorney, for appellee.

STIGER, J.—This case is before us on resubmission after granting a rehearing, our opinion appearing in 282 N.W. 540.

The information upon which appellant was tried charged that on February 9, 1937, in Johnson County, Iowa, he willfully, unlawfully, deliberately, premeditatedly, feloniously, designedly, with malice aforethought, and with the specific intent to kill, murdered Mrs. Mabel Rhodes, his wife, in the following manner: the said Walter H. Rhodes willfully deposited in a shotgun dynamite or other explosive material and thereafter and then and there did induce Mrs. Mabel Rhodes, his wife, to use and explode the said gun, thereby killing the said Mrs. Mabel Rhodes, his wife.

Appellant interposed a demurrer to the information, claiming in substance, that (1) the information was duplicitous and (2) that the information did not charge the appellant with first degree murder as defined by Code section 12911, but if any crime is charged in the information it is the crime defined by Code section 12961, which reads:

"12961. Death caused by high explosives. If any person wilfully deposits or throws in, under, or about any dwelling house, building, boat, vessel, or raft or other inhabited place, where its explosion will or is likely to destroy or injure the same, any dynamite, nitroglycerin, giant powder, or other material, and by reason of the explosion thereof any person is killed, he shall be guilty of murder."

The trial court overruled the demurrer. Appellant's first assignment of error is based on the action of the court in overruling the demurrer. There is no merit in appellant's contention and the assignment does not warrant a discussion.

The remaining assignments of error complain of the rulings of the trial court in overruling appellant's challenges to the jurors for cause. Appellant exhausted his peremptory challenges and strikes, and was compelled to accept the juror, J. A. Zenishek.

Code section 13830 reads:

"13830. Challenges for cause. A challenge for cause may be made by the state or defendant, and must distinctly specify the facts constituting the causes thereof. It may be made for any of the following causes:

"" * * *

"11. Having formed or expressed such an opinion as to the guilt or innocence of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial."

The question to be determined on this appeal is whether the trial court erred in overruling appellant's challenge to juror Zenishek for cause; that is, had this juror formed or expressed such an opinion as to the guilt of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial?

On direct examination, Mr. Zenishek stated that he did not know of any reason that would prevent him from sitting as a trial juror in the case and to serve as such fairly and impartially; that he would give the evidence introduced by both the state and defense thoughtful, careful and diligent consideration; that he would be guided by the instructions of the court; and that he would be willing to arrive at his verdict based solely on the evidence introduced in the trial of the case.

On cross-examination, he testified that "if the crime charged in the information is that this defendant killed his wife" he would make the state prove, beyond a reasonable doubt, what act defendant did to kill his wife; that he would be a fair and impartial juror in the case. On further cross-examination, he testified:

"Q. Have you read the accounts of this alleged crime in the various newspapers? A. Some.

"Q. Have you ever heard it discussed or discussed it? A. Some.

"Q. I suppose the facts alleged in the newspapers were set out therein as being the facts in this case, weren't they? A. I don't know.

"Q. So far as you know, I suppose? A. Yes.

"Q. From reading the papers and from the ·discussion that you have heard and had, have you formed an opinion which has been fixed in your mind as to the guilt or innocence of this defendant? A. Well, some.

"Q. In other words, you have fixed an opinion from reading the newspapers and from the discussion you have

heard, as to the guilt or innocence of the defendant, haven't you? A. Yes, sir.

"Q. And that opinion is such an opinion as would require some evidence to the contrary to remove it, wouldn't it? A. Yes, sir.

"Q. And I suppose you would have to hear evidence from some witnesses different from what you have already heard before you would be willing to change this opinion, is that correct? A. Well, I suppose.

"Q. In other words I suppose, Mr. Zenishek, if you entered the jury box with that opinion in your mind that you have already formed, that it would remain with you unless you heard some evidence to the contrary? A. Yes, sir.

"Q. And that if no such evidence were introduced to change that opinion you would still have it during the trial? A. Yes, sir.

"Q. And this opinion you have already formed would influence your verdict in this case if you sat as a juror? A. Well, it may."

Appellant then challenged the juror for cause for the reason that the above examination showed that he had a fixed opinion as to the guilt or innocence of appellant. Mr. Zenishek again testified on re-direct examination that he, under his oath as juror, would decide the case solely upon the evidence introduced and the instructions of the court.

He further testified:

"Q. Now this opinion you have, that you say you have, is one that is based solely upon what you have read in the newspapers? A. Yes, sir.

"Q. So that you don't know whether or not this opinion —what you have read about, is true or not? A. No, sir.

"Q. Do you understand, Mr. Zenishek, that there exists a presumption of innocence which exists in behalf of the defendant? A. Yes, sir.

"Q. If you have taken this oath as a juror and you sit on the trial of this case, could you lay aside that opinion and try this case solely and entirely upon the evidence introduced in the trial of this case? A. Yes, sir.

"Q. And you could do that? A. I think so.

"Q. And would you do that? A. I think so.

"Q. Would .you lay aside that opinion? A. I think so.

"By the court: Do you feel that this opinion which you may have formed, would in any manner interfere with your rendering a fair and impartial verdict if you are chosen as a juror? A. I don't think so.

"Q. You don't think so? A. No.

"The court: The challenge for cause is overruled."

The juror was asked, "from reading the papers and from the discussion that you have heard and had, have you formed an opinion which has been fixed in your mind as to the guilt or innocence of this defendant?" He answered, "well, some." Prior to this place in the examination, the juror had testified that there was no reason why he could not sit as a fair and impartial juror on the case and that he would rest his verdict solely on the evidence introduced and the instructions of the court. Nothing had been said about a "fixed" opinion. The question called for an affirmative answer and the answer given was "well, some."

In the case of State v. Vatter, 71 Iowa 557, 32 N. W. 506, a prospective juror first stated that he did not have an opinion which would prevent him from rendering a true verdict. On cross-examination, in answer to the question whether his opinion was unqualified, he stated that it was. The court then states in 71 Iowa on page 558, 32 N. W. on page 507:

"But all through their examination they appeared to adhere to the belief that they had no opinion which would prevent them from rendering a true verdict according to the evidence. It is a very rare thing that a person called as a juror, who has heard the facts connected with the case, and has formed some kind of an opinion in reference thereto, maintains entire consistency in his examination as to his qualifications as a juror. The difficulty arises from the fact that many of them do not understand the difference between a qualified and an unqualified opinion, and, the questions being put to them in a leading form, there is often an apparent contradiction in the answers given. We think, when the whole examination of the jurors in question is considered, the court did not err in overruling the challenge for cause."

In the case of State v. Burzette, 208 Iowa 818, 823, 222 N. W. 394, 396, Justice Evans, speaking for the court, stated:

"In response to the examination of defense counsel, the juror said he had such an opinion as would require evidence to remove. The state of mind thus described is incorporated in the question. It is a stock question, and is too hoary to be condemned. It must be said, nevertheless, that it serves little function in ascertaining the real state of mind of a juror. The question calls for an affirmative answer, and always receives one. The problem is then laid upon the juror to harmonize such answer with other answers to the effect that he can lay his opinion aside and render a verdict upon the evidence and the instructions, uninfluenced by such opinion. The skill of counsel in such a dialogue is usually superior to that of the juror, and this fact is not to be ignored by the court in determining the qualification of a juror. This juror answered repeatedly that he could lay aside the opinion he formed, and that he could try the case upon the evidence and the instructions, without regard to such opinion. We think the examination as a whole brought the question fairly within the discretion of the trial judge, and within the rule which we have heretofore laid down in many of our prior cases."

Mr. Zenishek testified that he knew that there was a presumption that the appellant was innocent. It does not appear that he had a *conviction* that appellant was guilty or that he believed that what he read in the newspapers was true. He stated he did not know whether what he had read or heard was true or not.

The entire examination of Mr. Zenishek satisfies us that he had not formed an unqualified, fixed opinion as to the guilt of appellant. His opinion was based solely on hearsay and on the hypothesis that what he had read and heard was true. He repeatedly testified that he could and would lay aside his opinion and decide the case solely on the evidence and the instructions of the court. The fact that he had an opinion which would require evidence to remove does not, in the light of the entire examination of the juror, establish that he had formed an opinion as to the guilt of appellant that would prevent him from rendering a true verdict upon the evidence

submitted on the trial of the case. State v. Lawrence, 38 Iowa 51; State v. Bruce, 48 Iowa 530, 30 Am. Rep. 403; State v. Sopher, 70 Iowa 494, 30 N. W. 917; State v. Vatter, 71 Iowa 557, 32 N. W. 506; State v. Smith, 73 Iowa 32, 34 N. W. 597; State v. Bone, 114 Iowa 537, 87 N. W. 507; State v. Brown, 130 Iowa 57, 106 N. W. 379; State v. Ralston, 139 Iowa 44, 116 N. W. 1058; State v. Hassan, 149 Iowa 518, 128 N. W. 960; State v. Teale, 154 Iowa 677, 135 N. W. 408; State v. Williams, 197 Iowa 813, 197 N. W. 991; State v. Harding, 205 Iowa 853, 216 N. W. 756; State v. Reed, 205 Iowa 858, 216 N. W. 759; State v. Wheelock, 218 Iowa 178, 254 N. W. 313.

In the case of State v. Lawrence, 38 Iowa 51, the juror testified that he had read the newspaper accounts of the killing of decedent; that he believed the man had been murdered and that the defendant did it and that it would take some evidence or explanation to remove that opinion from his mind; that he had no prejudice against defendant and based his opinion entirely on rumor and newspaper reports; that he had no personal knowledge of the facts and that he could decide the case with the same impartiality that he would have if he had never heard of the case. The court states [38 Iowa 51, 54]:

"It is scarcely possible in a community, where an act has been done which startles and attracts the public mind, to obtain a juror, who should be entrusted with so grave a matter as the determination of the question of the guilt or innocence of the accused, whose mind has received no impression with regard to the case. Either from public rumor, or newspaper reports, almost every person competent to serve as a juror, will have learned something in regard to the circumstances attending the commission of the alleged offense. And, as some impression, more or less strong is almost invariably made by such reports, the rule which would demand a juror with no opinion respecting the case, would in cases attracting public attention, and in which intelligence is most needed, practically exclude every intelligent man from the jury."

In State v. Reed, 205 Iowa 858, 216 N. W. 759, a juror testified that he had formed an opinion *on the assumption* that what he had heard and read was true; that his opinion was qualified; that he would lay it aside, and expected to lay

it aside, when he got evidence to change it, but not until then. He testified that he could decide the case solely upon the evidence and the court's instructions, lay aside all that he had heard and would disregard any opinion which he had formed. The court states in 205 Iowa on page 859, 216 N. W. on page 759:

"The trial court was the trier of fact on the question of the existence of this ground of challenge. He must be, and is, invested with discretion in passing upon the question of disqualification for such reason. The testimony here is quite different than that presented in the former appeal, 201 Iowa 1352. There, the juror testified that he did not think that he could enter the trial of the case, knowing what he did about it, and still give the benefit of the presumption of innocence to the defendant. The court was within his province in overruling the challenge, and we ought not to interfere with his action. State v. Teale, 154 Iowa 677; State v. Krampe, 161 Iowa 48, 52; State v. Hassan, 149 Iowa 518; State v. Harding, 205 Iowa 853."

It must be conceded, and it is conceded, that the trial court had a large discretion in allowing or disallowing the challenge and that this court will not interfere with the ruling unless there has been a clear abuse of discretion. The ruling of the trial court overruling appellant's challenge was well within his judicial discretion and there was clearly no abuse of the discretion reposed in the trial court.

Appellant cites, among other cases, State v. Crofford, 121 Iowa 395, 96 N. W. 889; State v. Teale, 154 Iowa 677, 135 N. W. 408; State v. Reed, 201 Iowa 1352, 208 N. W. 308.

In the case of State v. Crofford, supra [121 Iowa 395, 96 N. W. 891], the juror testified on his voir dire examination that he lived in the same township as the girl that was alleged to have been murdered; that he had discussed the circumstances and heard the circumstances of the crime discussed; that he had read all the testimony of the defendant and believed it to be true; that he had "made up his mind." He stated that he was not unprejudiced and believed that what he had heard was true. After persistent cross-examination, he stated, "I think I would render an impartial verdict." The court held that the

challenge to this juror should have been sustained. The court, in the Crofford case, supra, recognizes the rule established in the cases of State v. Lawrence, State v. Sopher, supra, and other cases cited above in the following language:

"In these days when the story of every alleged crime of a serious nature is promptly heralded by the newspapers, and comes quickly to the knowledge of the great body of intelligent citizens of the county, it is scarcely possible, even if it were thought desirable, to obtain a jury of average men having no impressions or opinions as to the merits of the case. In view of this fact we have in numerous cases refused to sustain an appeal based upon the overruling of challenges, where, notwithstanding such impressions or opinions, it fairly appears that the juror is fair-minded and unprejudiced, and is able and willing to render an impartial verdict. * * *. It is readily conceivable that an opinion of a defendant's guilt may be so qualified in the juror's mind as not to be a sufficient ground of challenge. For instance, a juror who says that, if the state-ments he has heard or read be true, then, in his judgment, the accused is guilty, is not necessarily subject to challenge. * * *. In such case the opinion of guilt is based upon the hypothesis that certain facts exist, but the truth of the hypothesis itself is a matter upon which the juror's mind is still open and un-determined. Where, however, the juror discovers that he has become convinced of the truth of the alleged evidence, and therefrom has reached a satisfactory conclusion of the guilt of the accused, a very different situation is presented."

The court in the Crofford case, supra, distinguishes, and we think properly so, the state of mind of a juror who believes the hearsay is true and has made up his mind and has a con-viction that the defendant is guilty and the state of mind of a juror who does not know whether the rumors are true and who bases his opinion on the mere assumption that the hearsay is true. In the former case, the following statement in the Crofford case in 121 Iowa on page 400, 96 N. W. on page 891, is applicable:

"A person accused of crime should bear no greater burden than is created by the evidence produced against him on the trial, and the juror who passes upon that evidence should come

to its consideration unhampered, and unembarrassed by any ready-formed *convictions* as to the vital fact or facts in controversy." (Italics supplied.)

The case of State v. Crofford, supra, may be distinguished from the instant case on the facts.

Appellant especially relies for reversal on the dictum found in the case of State v. Teale, 154 Iowa 677, 681, 135 N. W. 408, 410. In the Teale case, the juror testified that he had formed an opinion as to the guilt of the defendant based upon what had been told him and that "it might be hard to lay the opinion aside, and that it might, to some extent, influence his verdict." A challenge was then interposed. The juror subsequently testified that he thought he could lay aside the opinion he already had and try the case and render his verdict solely on the evidence. The court then states:

"In the examination of jurors as to their qualifications to try a case, the sole question to be determined by the trial court is whether they can fairly and impartially hear the evidence, and render a verdict thereon which shall be entirely free from the aid or influence of previous knowledge or preconceived opinions. And in the very nature of the situation the trial court must be given discretion in such matters which will not be interfered with, unless an abuse of discretion be shown. State v. Hassan, 149 Iowa 518; State v. Bone, 114 Iowa 537; State v. Brown, 130 Iowa 57.

"A person is qualified to act as a juror when it is apparent from his entire examination that, notwithstanding his present knowledge of the facts or any opinion which he may have formed therefrom, he can try the case fairly and impartially on the evidence alone. State v. Rohn, 140 Iowa 640; State v. Ralston, 139 Iowa 44. In this case we think it apparent from the examination of the juror that he did not have such a fixed and unqualified opinion as to disqualify him. Under the rule of the cases supra, we think there was no error in overruling the challenge."

After the court overruled the challenge, it uttered the dictum on which appellant relies which we quote:

"We are constrained to say in this connection, however, that we see no occasion in the ordinary administration of the

criminal law in this state for the close rulings on the qualifications of jurors that are constantly brought to our attention. Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded. Confidence in the fairness and impartiality of each member of a jury, which shall be sworn to try a man of a charge involving his life or liberty, is of the greatest importance to the welfare of the state. Indeed, it is of such paramount importance to every citizen that the time and expense necessary to secure jurors as to whom no doubt may rightly exist is an insignificant consideration.''

The quotation relied on by appellant is obviously in conflict with the holding in the case which is in harmony with the rule adhered to in this case and established by a long line of decisions of this court.

In State v. Reed, 201 Iowa 1352, 1353, 208 N. W. 308, 309, the juror testified, among other things, that '' 'I don't think that I could enter the trial of this case, knowing what I do about it, and still give the benefit of the presumption of innocence to the defendant.' '' The juror manifestly had a fixed, unqualified opinion of the guilt of the defendant based on his own knowledge. See State v. Reed, 205 Iowa 858, 216 N. W. 759.

Appellant refers us particularly to the following portion of the juror's examination:

''Q. If you have taken this oath as a juror and you sit on the trial of this case, could you lay aside that opinion and try this case solely and entirely upon the evidence introduced in the trial of this case? A. Yes, sir.

''Q. And you could do that? A. I think so.

''Q. And would you do that? A. I think so.

''Q. Would you lay aside that opinion? A. I think so.''

With reference to the answers ''I think so'' appellant states in argument ''is there any doubt in anyone's mind but that juror Zenishek had distinct misgivings as to his own capacity to do the things that he was asked if he could do by the state?'' The first answer was a positive ''yes, sir.'' It was

the duty of the trial court, in the exercise of his discretion, to decide the question, not from isolated answers, but on the entire examination of the juror. The construction of the answers ''I think so'' is necessarily influenced by other answers of the witness and his voice, manner and bearing while testifying. We think it is manifest that the witness did not intend to imply that he had a doubt of his ability to decide the case solely on the evidence. The trial court heard and observed the witness, and, after careful examination of the transcript, we find no reason for interfering with his conclusion.

In view of our prior decisions, we hold that the trial court did not abuse its discretion in holding that juror Zenishek had not formed such an opinion as to the guilt of appellant that would prevent him from rendering a true. verdict upon the evidence submitted on the trial.

Finding no error, the case is affirmed. Our prior opinion, appearing in 282 N. W. 540, is withdrawn.—Affirmed.

OLIVER, C. J., and HAMILTON, MILLER, BLISS, and HALE, JJ., concur.

SAGER, MITCHELL, and RICHARDS, JJ., dissent.