# IN THE COURT OF APPEALS OF IOWA

No. 16-2195
Filed July 18, 2018

**TRAMARUS DEONTE DIXON,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Applicant appeals from the denial of his application for postconviction relief.

**REVERSED AND REMANDED.**

Thomas A. Hurd of Glazebrook & Hurd, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Tramarus Dixon was charged with two counts of robbery in the first degree. He was convicted on one count and was acquitted of the other. On direct appeal, this court affirmed his conviction. *See State v. Dixon*, No. 12-1873, 2013 WL 6405781, at *1–3 (Iowa Ct. App. Dec. 5, 2013). In this case, Dixon appeals from the denial of his application for postconviction relief.

The facts and circumstances surrounding the offense were set forth in our prior opinion:

> Waterloo resident Melvin Sickels was walking his dog on the night of January 26, 2009, when a car parked by the Motel 6 on Logan Avenue raised his suspicions. He watched two men exit the back seat, cross the street, and go into the motel, while the driver waited in the car. The third man stood outside the car for a little while and then returned to the driver's seat. Sickels "called the police to see if they'd come check and just see if everything was ok." While on the phone with the police, he saw two men run from the motel and jump into the car, which sped east on Ralston Road.
>
> About the same time Waterloo Police Officer Lisa Campbell was driving by the Motel 6 on her way to work. She saw a car parked at the corner of Logan Avenue and Ralston Road and noticed its brake lights came on. When she later looked at a photograph of the Dixon's car, she believed the lights looked the same.
>
> Joel Johnson was working the front desk of the Motel 6 that night. At 10:15 p.m. two men entered the motel wearing masks over their faces and pointed a gun at him. Johnson, who was very familiar with guns, identified the weapon as a 9 millimeter semiautomatic black handgun with a silver handle. The two men hopped over the counter. One held the gun behind Johnson's head and instructed him to open the cash drawer. Johnson said the motel generally keeps less than $200 on hand. The two men stuffed the money from the drawer into bank deposit bags, each of which was labeled with a motel employee's name. The robbers then asked Johnson where the safe was. When Johnson told them the motel did not have a safe, the armed man struck him on the side of the head with the gun. The two robbers then ran out of the motel with the money. Johnson called 911.
>
> When the police arrived, Johnson gave them a physical description of the two men. Johnson first described the shorter of the two men, recalling he wore blue jeans, a black sweatshirt, a red

mask, and Nike sneakers with a blue and black insignia on them. Johnson described the armed man as taller, wearing a blue mask, a dark pullover sweatshirt, blue jeans, and Nike sneakers. Johnson said both robbers wore blue gloves on their hands.

Sickels told police the car which caught his attention was a dark colored four-door sedan. Officer Campbell said the car she saw matched Sickels's description. Police searched the surrounding neighborhoods for the sedan. Officer Aaron McClelland followed Ralston Road and then took Lakeside Street to Niles Street where another officer had discovered a light blue glove discarded in the intersection.

Officer McClelland spotted a blue Chevy Lumina parked in the 4000 block of Niles Street. McClelland questioned the three occupants of the Lumina but did not find any evidence of the robbery. Parked in the nearby driveway of 4039 Niles, Officer McClelland noticed a green Pontiac Bonneville. He touched the car's hood and found it still warm to the touch. When McClelland shined his flashlight into the Bonneville, he saw a semiautomatic handgun in plain view on the back seat.

The driver of the Lumina also directed the officers to the house at 4039 Niles. When Officer McClelland and Sergeant Monty Frana knocked on the door, it was answered by an elderly woman named Annie Davis. Davis, who is Dixon's grandmother, initially told the police no one else was in her house. When the officers told Davis about the robbery and seeing the gun in the Bonneville, she said: "I'm going to tell you the truth. They're in the back bedroom."

The officers entered and in the back bedroom found three men identified as Jamarus Wise, Tramarus Dixon, and Orentheo Campbell. The police discovered a fourth man, Malcolm Leflore, in the bathroom, where he told police he was hiding because he possessed marijuana. In patting down Wise, police found $215. The officers failed to secure the cash, leaving it on the bed in the back bedroom where Dixon remained separated from his companions.

During the investigation, police allowed Antoinette Davis, Dixon's mother, into the house to assist her elderly mother, Annie Davis. Antoinette told the police Dixon suffered a knee injury and the pain caused him to pass out, though no one else saw this occur. Police allowed Antoinette to take her son to the hospital. After Antoinette and Dixon left the back bedroom of the house, police could not locate the $215 seized from Wise.

The State presented evidence that Dixon did not go straight to the hospital. While he left the house around midnight, he did not arrive at the emergency room until 1:04 a.m. According to hospital records, he checked himself out against medical advice at 1:57 a.m. without receiving any treatment. The hospital records also showed Dixon's home address was not 4039 Niles. Around 4 a.m., Dixon

came to the police station where he was interviewed for about forty minutes.

In their search of the Davis home, officers found a blue latex glove in a box in the living room which was "identical" to the glove found in the street on the route from the motel. They also found a black hooded sweatshirt in the back bedroom, as well as a pair of Air Jordan athletic shoes which appeared to have been tossed down the basement steps. The police obtained a search warrant for the Bonneville, which was registered to Dixon's mother. Inside the car officers found the handgun, blue latex gloves, a black hat, and other clothing. They also located Dixon's school ID, cell phone, bank statement, and insurance records inside the car.

The police found four empty deposit bags matching the ones taken from the Motel 6 in a garbage container just north of the Davis home. In addition, police brought Johnson to the house, where he identified Wise as one of the men who robbed him.

Analysts with the Iowa Division of Criminal Investigation (DCI) found the tread from the Bonneville's tires to be consistent with tracks left in the snow outside the Motel 6. They also found a shoeprint from the area where the sedan was parked outside of the motel and determined it was left by a shoe of similar size and tread as the Air Jordan shoes found in the basement of 4039 Niles.

*Id.* at *13.

Following this court's affirmance of his conviction, Dixon filed an application for postconviction relief. In his application, Dixson asserted numerous claims of ineffective assistance of counsel. We choose to focus on one of those claims. In his application, Dixon contended his counsel provided constitutionally deficient representation in failing to challenge for cause a juror who demonstrated the inability to afford Dixon the presumption of innocence and to render a verdict on the evidence presented. The postconviction court denied the claim. The court found:

Applicant alleges that trial counsel was ineffective for failing to request that two jurors be removed for cause. Both jurors made comments during jury selection that they believed defendant should present evidence tending to prove that he is not guilty. One juror specifically stated that because defendant was late for trial, the burden shifted to that defendant.

Trial counsel testified at hearing for post-conviction relief that when jurors make similar statements to those made by the jurors in question in this case, he questions those jurors before the other prospective jurors in an attempt to make an example of their statements. A review of the record in this matter shows that trial counsel did question the proposed jurors regarding their statements. These jurors were later removed by trial counsel through the use of strikes.

This court finds that the trial strategy employed by trial counsel was reasonable under the prevailing professional norms considering the circumstances. Post-conviction relief is not appropriate given the actions of trial counsel.

The defendant and the State agree the district court erred in finding both of the jurors were removed via the exercise of peremptory strikes. The defendant and the State agree one of the challenged jurors, juror M.H., did in fact serve on the jury. They disagree, however, on whether Dixon has a viable claim of ineffective assistance of counsel.

We review ineffective-assistance claims de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Generally, to establish a claim of ineffective assistance of counsel a defendant must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* The defendant must prove both elements by a preponderance of the evidence. *See State v. Madsen*, 813 N.W.2d 714, 723 (Iowa 2012). To show a breach of an essential duty, the defendant must establish "the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *Id.* "Prejudice exists if there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Madsen*, 813 N.W.2d at 727. "A reasonable probability means a substantial, not just conceivable, likelihood of a different result." *Id.* The failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

In defense of the district court's judgment, the State first contends Dixon did not preserve this issue for appellate review. Specifically, the State contends Dixon had an obligation to file a motion pursuant to Rule 1.904 to attempt to correct the district court's admittedly erroneous finding that juror M.H. did not serve on the jury. We disagree. For the purposes of error preservation, "[i]f the court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is incomplete or sparse, the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). Here, the district court considered the issue presented. It just made an erroneous finding. While it might have been advisable for the defendant to file a Rule 1.904 motion to give the district court the opportunity to correct the finding, it was not necessary to preserve error. We thus turn to the merits of the defendant's claim.

We first consider whether Dixon proved his counsel breached a fundamental duty in failing to challenge juror M.H. During the course of voir dire, it became apparent juror M.H. had strong views regarding the burden of proof and the defendant's guilt. In particular, juror M.H. believed the defendant was guilty unless the defendant proved otherwise. Juror M.H. held this belief because the defendant returned a few minutes late from a recess.

Defense Counsel: So as a juror even if you felt that they did everything they possibly could, there were some mistakes along the way, but they just fell short and weren't able to cross the gulf of reasonable doubt, just because Mr. Dalrymple chose to prosecute Mr. Dixon on behalf of the state, and just because you really like Mr. Dalrymple, does that mean he somehow has to prove less to you? Juror M.H.: No, he's got to prove—you've got to do your part to prove to me he's not guilty where he has to prove he is.

The questioning continued:

Defense Counsel: Well you heard me ask [another prospective juror], we had this conversation back and forth, we were talking about whether or not Mr. Dixon has to prove anything and she kind of responded to me well both of you have to prove something, the state as well as Mr. Dixon. Juror M.H.: Well I agree. He has to prove to you and you've got to prove to me that he is not guilty.
Q: Okay. A: And if you can't do it, then he's guilty in my book.
Q: Okay. A: I mean that's the way my mind has always been.
Q: And I'm going to ask you the same question I asked [the other prospective juror]. Okay? You may believe that as you sit there in the chair right now; right? A: Right.
Q: And obviously you do because you just told me that; right? But you took an oath. Do you remember standing up? A: But we're all not perfect, you have to remember that.
Q: I do remember that and I'll get back to you. I'm glad you pointed that out. A: No, like I said, you've got to prove and he's got to prove that he's not guilty just like he has to prove to me he is.
Q: Okay. A: Until it's proven it's gonna sit where it is.
Q: Where's that, where is it? A: Neutral right now.
Q: It's neutral? What does that mean? A: Well I had my opinions earlier.
Q: What are those? A: When he didn't show up here at 1:00, he was guilty as far as I was concerned then. Everybody else was here; he should have been here, too.
Q: Okay. A: At that time. So now you've got to prove to me he's not.
Q: Because he was not here at the time when it started? A: Yep.

Defense counsel returned to this conversation with M.H. on one other occasion.

Defense Counsel: And you heard me have this discussion with [another prospective juror], that even if you believe the law should be as you interpret it, as [M.H.] interprets it, are you willing to leave that outside the courtroom if the court instructs you and says according to Iowa law the only party in this case that has the burden

to prove anything is the prosecution? That's what the law says. That's what I'm instructing you to do. Can you do that? . . . [M.H.], would you be able to do that? Juror M.H.: I don't know if I could. I'd be willing to try it.

Q: Is it hard for you? A: I think it would be now.

Q: Because of what you – A: 'Cause my mind has set the other way. Earlier I was fine. But then again he might convince me, I don't know.

We conclude the defendant proved counsel breached a duty in failing to challenge this juror for cause. A juror shall be removed for cause where the juror has formed an opinion preventing the juror from rendering an impartial verdict upon the evidence admitted at trial. *See* Iowa R. Crim. P. 2.18(5)(k). It is apparent juror M.H. had formed an opinion regarding Dixon's guilt that would prevent him from rendering a verdict upon the evidence admitted at trial. Juror M.H. expressed his belief the defendant was guilty in his book. In addition, to the extent the juror indicated he would listen to the evidence, he expressed an inability to follow the law, stating he presumed the defendant was guilty unless the defendant proved otherwise. Under the circumstances, it is clear the juror should have been removed for cause. *See State v. Jones*, 904 N.W.2d 566, 571 (Iowa 2017) ("On the issue of disqualification of a juror for cause, there is authority for the proposition that when a potential juror at the outset of voir dire expresses bias or prejudice unequivocally, the potential juror should be disqualified for cause notwithstanding later, generalized statements the potential juror could be fair."); *State v. Farnsworth*, No. 13-0401, 2014 WL 2884732, at *4 (Iowa Ct. App. June 25, 2014) (holding the district court did not abuse its discretion in removing for cause juror who could not follow the law regarding the burden of proof).

The State contends Dixon failed to prove trial counsel breached an essential duty because counsel may have had strategic reasons for not challenging juror M.H. for cause. It is well established that we will not find counsel ineffective if counsel made a reasonable strategic decision to take or forego particular action. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."). There is no evidence this was a strategic decision. Defense counsel testified he did not specifically recall the juror at issue but stated it was possible that he might not have challenged this juror for cause because defense counsel thought he was sufficiently rehabilitated or because he might have been out of strikes. Neither of these explanations justifies the failure to pursue a challenge for cause given the definitive nature of juror M.H.'s statements about Dixon's guilt. M.H. refused to accept a presumption of innocence, indicated Dixon's lateness pushed him to a presumption of guilt, and admitted any change in his opinion would be difficult because "my mind has set the other way." Having a set mind on guilt or innocence is the very definition of actual bias. *See State v. Webster*, 865 N.W.2d 223, 236 (Iowa 2015) ("Actual juror bias occurs when the evidence shows that a juror, in fact, is unable to lay aside prejudices and judge a case fairly on the merits."). In addition, defense counsel's statement that he did not challenge this juror because he might have been out of strikes demonstrates confusion on the issue and not an exercise of strategic judgment. We thus reject the State's contention that Dixon has not established his trial counsel breached an essential duty.

We next address the issue of whether Dixon has established constitutional prejudice. We begin our analysis by noting the fundamental importance of the right to trial by an impartial jury and the processes in place to protect the right.

> "The right to a trial by an impartial jury lies at the very heart of due process." *Smith v. Phillips*, 455 U.S. 209, 224 (1982) (Marshall, J. dissenting). To protect the defendant's right to trial by a fair and impartial jury, we have in place an elaborate pretrial process to select and empanel a fair and impartial jury. The prospective jurors must be drawn from a fair cross-section of the community. *See Smith*, 455 U.S. at 226 (Marshall J., dissenting). The defendant may seek to change the venue of his trial upon proof "that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from the county." Iowa R. Crim. P. 2.11(10)(b); *see Smith*, 455 U.S at 227 (Marshall J., dissenting). The parties may challenge the jury panel for any material departure from the statutory requirements for drawing or returning the jury. *See* Iowa R. Crim. P. 2.18(3). The parties are entitled to conduct voir dire of the prospective jurors to determine whether they are qualified and able to serve as jurors. *See* Iowa R. Crim. P. 2.18(6); *Smith*, 455 U.S. at 226 (Marshall, J., dissenting). The parties are entitled to challenge and remove jurors for cause. *See* Iowa R. Crim. P. 2.18(5). The parties are entitled to peremptory strikes of other jurors. *See* Iowa R. Crim. P. 2.18(9).

*State v. Christensen*, No. 17-0085, 2018 WL 1865353, at *8 (Iowa Ct. App. Apr. 18, 2018) (McDonald, J., dissenting).

When these processes fail and a biased juror is seated on the case, the defendant's right to trial by an impartial jury is compromised. This failure directly affects the defendant's interest in having a fair determination of guilt. *See Patton v. United States*, 281 U.S. 276, 292 (1930) ("A constitutional jury means twelve [persons] as though that number had been specifically named; and it follows that, when reduced to eleven, it ceases to be such a jury quite as effectively as though the number had been reduced to a single person."), *abrogated by Williams v. Florida*, 399 U.S. 78 (1970). This failure also undermines the public's confidence

in the integrity of our trial processes. *See State v. Teale*, 135 N.W. 408, 410 (Iowa 1912) ("Confidence in the fairness and impartiality of each member of a jury, which shall be sworn to try a man on a charge involving his life or liberty, is of the greatest importance to the welfare of the state."); *see also Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) ("More is at stake here than the rights of petitioner; justice must satisfy the appearance of justice. An irregularity in the selection of those who will sit in judgment casts a very long shadow."); *Knox v. State*, 29 A.3d 217, 223 (Del. 2011) ("[J]uror impartiality must be maintained not only in the interest of fairness to the accused but also to assure the integrity of the judicial process."). There is thus little doubt that had defendant's trial counsel unsuccessfully challenged this juror for cause and raised the issue on direct appeal, the defendant would be entitled to relief. *See State v. Tillman*, 514 N.W.2d 105, 108 (Iowa 1994) (stating, on direct appeal, "the defendant must show (1) an error in the court's ruling on the challenge for cause; and (2) either (a) the challenged juror served on the jury, or (b) the remaining jury was biased as a result of the defendant's use of all of the peremptory challenges").

However, this proceeding is not a direct appeal on a claim of error. This proceeding is a collateral attack on the defendant's conviction via a claim of ineffective assistance of counsel. To establish an entitlement to relief on this specific claim, the defendant must establish *Strickland* prejudice. This generally requires the defendant to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Graves*, 668 N.W.2d at 882 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Typically, this formulation requires proof that the outcome of the

proceeding—that is the determination of legal guilt or innocence—would have been different. *See id.* The State contends there is overwhelming evidence of Dixon's guilt, and Dixon thus cannot establish a reasonable probability that the result would have been different if juror M.H. had been removed for cause.

While the State's argument has some appeal, we cannot agree the defendant failed to establish constitutional prejudice. As a general rule, it is true the defendant must establish a reasonable probability of a different outcome to warrant relief on an ineffective-assistance claim. However, this is not true in all circumstances. In certain circumstances, the deprivation of the right itself is sufficient to establish an entitlement to relief. *See Krogmann v. State*, __ N.W.2d __, __, No. 15-0772, 2018 WL 3084028, at *26 (Iowa 2018). We conclude the error at issue in this proceeding is sufficient to establish *Strickland* prejudice and an entitlement to relief.

First, the effects of counsel's deficient performance are immeasurable.

> The presence of a juror with demonstrated bias can never be found harmless beyond a reasonable doubt. Jury deliberations are a black box. We cannot know what effect the bias had on the biased juror herself, nor can we know what influence the biased juror had on the rest of the jury.

*United States v. Gianakos*, 415 F.3d 912, 933–34 (8th Cir. 2005) (Bright, J., dissenting). Such jury insulation is by design, yet it makes any subsequent determination of error based on actual bias nearly impossible. *See United States v. Benally*, 546 F.3d 1230, 1233 (10th Cir. 2008) ("Jury decision-making is designed to be a black box . . . deliberately insulated from subsequent review. Judges instruct the jury as to the law, but have no way of knowing whether the jurors follow those instructions. . . . Juries are told to put aside their prejudices and

preconceptions, but no one knows whether they do so. Juries provide no reasons, only verdicts."), *abrogated on other grounds by Pena-Rodriquez v. Colorado*, 137 S.Ct. 855 (2017).

Second, an actually biased juror serving on a jury always results in fundamental unfairness. That is, the trial mechanism itself is so fundamentally flawed that our confidence in the outcome of the proceeding is undermined regardless of the strength of the evidence. This principle is well established in Iowa law. "If a potential juror expresses actual bias, 'the law will not trust him' to be fair and impartial." *State v. Jonas*, 904 N.W.2d 566, 572 (Iowa 2017) (quoting *Dyer*, 151 F.3d at 984). *See Teale*, 135 N.W. at 410 (discussing fairness considerations); *State v. Arterburn*, No. 13-0035, 2014 WL 1715061, at *9 (Iowa Ct. App. Apr. 30, 2014) ("When a biased juror is impaneled, the fundamental fairness of the proceedings is called into question, and a new trial is required.").

Our sister states have reached a similar conclusion, holding that a postconviction claimant establishes an entitlement to relief upon showing an actually biased juror served on the jury. *See, e.g., Perkins v. State*, 144 So.3d 457, 472 (Ala. Crim. App. 2012) ("Because a defendant must demonstrate prejudice in a [post-conviction] proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury."); *Hall v. State*, 212 So.3d 1001, 1015 (Fla. 2017) ("In the postconviction context, we have held that a defendant must establish that an actually biased juror sat on the jury to succeed on a claim of ineffective assistance of counsel for failing to make a cause challenge."); *Carratelli v. State*,

961 So.2d 312, 324 (Fla. 2007) ("Under *Strickland,* to demonstrate prejudice a defendant must show that there is a reasonable probability-one sufficient to undermine confidence in the outcome-that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  In the context of the denial of challenges for cause, such prejudice can be shown only where one who was actually biased against the defendant sat as a juror."); *McGuire v. State*, 523 S.W.3d 556, 564 (Mo. Ct. App. 2017) ("[W]here defense counsel unreasonably fails to strike an unqualified juror for cause, the post-conviction movant is entitled to a presumption of *Strickland* prejudice.").

Juror M.H. stated to defense counsel, "When [Dixon] did not show up here at 1:00, he was guilty as far as I was concerned then."  Juror M.H. never wavered from his view that Dixon was guilty unless proved otherwise.  This is actual bias.  Dixon's defense counsel did not identify any reasonable strategic decision to forego a for-cause challenge to this juror.  To the contrary, defense counsel seemed to express confusion on the issue.  The district court erred in finding this juror did not serve on the jury; the State and the defendant agree on this.  Juror M.H.'s service on the jury resulted in actual prejudice to the defendant's fundamental right to be tried by a fair and impartial jury.  We reverse the judgment of the district court and remand this matter to vacate the defendant's conviction.  Due to our resolution of this matter, we need not resolve any of Dixon's other claims of error.

**REVERSED AND REMANDED.**