THE STATE v. CURRAN.

1. **Criminal Law:** SEDUCTION: INDICTMENT. An indictment for seduction is sufficient which charges the offense in the words of the statute.

2. ———: ———: EVIDENCE. It was not competent to show, in order to establish the unchastity of the prosecuting witness, that she had on a particular occasion acted in such a manner as to be reproved by her step-mother.

3. ——— ———: CHARACTER. Evidence of general moral character is not admissible in a prosecution for seduction, but the evidence should be limited to the defendant's character for virtue.

4. ———: ———: EVIDENCE IN REBUTTAL. The fact that testimony upon the original case was offered in rebuttal would not prevent the court from admitting it, if in furtherance of justice it should be so.

The State v. Curran.

admitted, and the fact that it was not ostensibly so admitted would not justify a reversal in the absence of a showing of prejudice by the manner of its admission.

5. ———: ———: COURTSHIP. The fact that the defendant was the suitor of the prosecuting witness, proven otherwise than by her testimony, tends to corroborate her testimony that her seduction was accomplished by him.

6. ———: ———: INSTRUCTION. It was *held* not to be error to refuse to give an instruction cautioning the jury against putting a strained construction upon the testimony of the prosecuting witness.

7. ———: ———: PREVIOUS CHARACTER. The jury were properly charged that every woman is presumed to be of chaste character until it is otherwise shown, and the burden of overcoming the presumption was upon defendant.

8. ———: ———: PRIOR AND SUBSEQUENT CONDUCT. It was competent for the jury to consider what was defendant's conduct toward the prosecutrix subsequent to, as well as prior to and at the time of, the alleged seduction.

*Appeal from Polk District Court.*

SATURDAY, APRIL 26.

THE defendant was convicted of the crime of seduction and sentenced to the penitentiary for two years. He appeals.

*Nourse & Kauffman* and *Bryan & Russell*, for appellant.

*J. F. McJunkin, Attorney General,* for the State.

ADAMS, J.—I. The defendant demurred to the indictment on the ground that it "contained no charge of facts as to the

1. CRIMINAL law: indictment: seduction.

means made use of to accomplish intercourse, which are essential to constitute the crime of seduction."

The charge is that the defendant "unlawfully and feloniously did seduce, carnally know and debauch one Laura E. Herring." The indictment, we think, is in the usual form and sufficient. The offense is created by statute, and it is sufficient to charge in the words of the statute, unless the words used are such that they do not necessarily charge the

offense. The words *seduce* and *debauch*, when used in con-
nection, do, we think, necessarily charge the offense. It can-
not be said that they need, when used in connection, to be
helped out by a legal conclusion. · In their common as well
as legal acceptation they import the idea of illicit intercourse,
accomplished by arts, promises or deception, and have no
other meaning.

II. The prosecuting witness testified that she commenced
receiving the defendant's attentions about three years previ-
ous to the alleged seduction, and continued, with some inter-
ruptions, until she revealed to him the fact that she was
pregnant, and asked him to marry her. Upon cross-exami-
nation she showed that during the time, or some part of it,
she had an intimate acquaintance with several gentlemen, but
she denied keeping company with any of them, and denied all
improper intimacy. The defendant offered to introduce as a
part of the cross-examination a letter admitted to be written
by her to him. The court excluded it, and the defendant
assigns the ruling as error. The letter contained the names
of two of her male acquaintances. The object of introduc-
ing it evidently was to impeach either her fidelity to the
defendant, or her chastity. We will not set out the letter.
It is sufficient to say that it could have the meaning claimed
only by a strained construction. Besides, if the letter was
material, it was more properly admissible as evidence in chief,
upon the part of the defendant, than in cross-examination.

III. The prosecuting witness testified that there was a
marriage engagement between her and the defendant, con-
tinuing through a considerable period of time. After the
engagement was contracted it appears that they quarreled
and parted two or three times, but while the engagement was
subsisting, with more or less harmony of feeling, she received
a Christmas present and a birthday present from one of her
male acquaintances, by the name of Dickinson. Upon cross-
examination she was asked a question in these words : "Did
you, at the time that you were going with Dickinson, hear at

any time that he said that you were engaged, and that the only thing lacking was the consent of your mother?" The State objected to the question, and the objection was sustained. The ruling is assigned as error.

It is insisted in argument that if the witness had heard that Dickinson claimed to be engaged to her she had reason to suppose, at least, that he had matrimonial designs, and if she received his attentions and presents with such supposition her action was inconsistent with an engagement to the defendant, and the jury had a right to consider the fact in determining whether she was really engaged to defendant, as she claimed. But the question we think objectionable upon several grounds. It assumes that the witness was "going with Dickinson," and we see no evidence to that effect. She received his presents, it is true, but she was not asked if she had heard of Dickinson's remark at that time. Besides, the remark attributed to him, if he made it, did not necessarily mean that he claimed that the witness was engaged to him.

IV. The defendant assigns as error the refusal to allow a question put to the prosecutrix, upon cross-examination, in these words: "Did you not, at the house of Mr. Haskill, in East Des Moines, in a conversation with Minerva Sims, put George's (the defendant's) picture along side of Howard Peasley's, and say that you thought Howard's was the nicest?" It is claimed that the remark, if she made it, indicated a state of feeling upon her part inconsistent with the idea that she was engaged to the defendant or could be seduced by him. Whether, if the prosecutrix was engaged to the defendant, and loved him as she claimed, it would have been impossible for her seriously to regard any other man as better looking, we express no opinion. We do not think the case is reversible upon this ground. Young ladies are not to be held to a very strict accountability when talking to their young lady friends about their lovers. Besides, it is proper to observe that the remark was not made about the young men

themselves, but their pictures. The exclusion of the evidence was not error.

V. The father of the prosecuting witness was examined in behalf of the State. Having stated that he never had any conversation with the defendant about marrying his daughter, he was asked if he ever heard her talk about it in the family. The question was objected to by the defendant, and the objection was overruled. In overruling it the defendant claims that there was error.

We think that the fact of the engagement could not be proven by what the prosecutrix said about it in the family. The objection, therefore, we think, might properly have been sustained. But if there was error we think it was without prejudice. The witness was not asked and did not testify as to what the prosecutrix said about marrying the defendant. She might have talked of the possibility of marrying him without claiming that there was an engagement.

VI. One Mintie Curran was introduced as a witness in behalf of the defendant, and was asked a question in these

2. ——: ——: words: "State whether or not, in the conversation
evidence. you had with Laura sometime in July, after the
22d, she referred to her cousins, the Winebrenners, and what a good time she had, and that her step-mother reproved her, and she said she delighted to do anything to spite her step-mother." The State objected to this question, and the objection was sustained. The ruling is assigned as error.

The fact that her step-mother reproved her would not show that her conduct was reprovable. At most it would only show that her step-mother was of that opinion; but the subject is not one for expert testimony, and if it were the expert should be introduced. Besides, a young lady might do many an act, while having a good time with her cousins, which a mother or step-mother might properly reprove, and yet which would involve nothing of unchastity.

VII. The court refused to allow evidence of general good

moral character on the part of defendant, but allowed evidence of his character for virtue. In this we think that there was no error. In 3 Greenleaf on Evidence, § 25, the author, speaking of evidence of moral character, says: "The evidence, when admissible, ought to be restricted to the trait of character which is in issue."

It is true that where a person is charged with larceny, for instance, his general character for honesty may be regarded as involved, for the same trait of character that would lead a person to commit larceny would lead him to commit fraud and all other crimes by which one attempts wrongfully to obtain the property of another. But a character for chastity is different from that of honesty, and a character for peaceableness is different from either.

VIII. After the defendant had rested the State called the father and mother of the prosecutrix for the purpose of proving that the defendant was with the prosecutrix on the 17th of September, 1876, being one of the times when the prosecutrix testified that the defendant had intercourse with her. The defendant objected, because such evidence would be evidence upon the original case, and not in rebuttal. The court overruled the objection and admitted the evidence. The defendant assigns the ruling as error.

The defendant had introduced in evidence a letter written him by the prosecutrix not long after the 17th of September, in which she invited him to come and see her, and giving as a reason that he had not been to see her for a long time. This letter and the evidence in relation thereto were introduced for the purpose of impeaching and destroying the testimony of the prosecutrix that the defendant had connection with her on the 17th day of September, which was not a long time, but a short time, before the writing of the letter.

The testimony of the father and mother of the prosecutrix was introduced, as we infer, as rebutting this impeaching evidence. It could not, we think, have that effect. But it did

have the effect to corroborate the prosecutrix. It was, therefore, evidence upon the original case. Section 4420 of the Code provides that after both parties have rested evidence upon the original case may be introduced for good reason, and in furtherance of justice. If the prosecutrix's letter and the evidence in relation thereto, introduced by the defendant, could be considered as having the effect of impeaching the testimony of the prosecutrix as claimed by the defendant, it was in furtherance of justice, we think, to allow the State to corroborate her by showing that it was true that the defendant was with the prosecutrix, on the 17th day of September, notwithstanding any statements in her letter inconsistent with her testimony. The fact that the testimony was offered in rebuttal would not prevent the court from admitting it, as upon the original case, if in furtherance of justice it should be so admitted. And the fact that it was not ostensibly so admitted would not justify a reversal in the absence of all showing of prejudice by the manner of its admission.

IX. The defendant asked the court to instruct the jury that in a case of seduction the defendant cannot be convicted on the testimony of the woman alleged to have been seduced, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense charged in the indictment, and such corroborative evidence should be of such facts or circumstances as are inconsistent with the innocence of the defendant; and if the facts and circumstances relied on in the present case are as consistent with the innocence of the defendant as with his guilt, such evidence would be insufficient, and the defendant should be acquitted. The court refused to so instruct, and the refusal is assigned as error.

5. ——: ——:
courtship.

The evidence relied upon as corroborative is that the defendant was the prosecutrix's suitor through a long period of time. Such fact, considered independently, would be entirely consistent with the defendant's innocence. He claims, therefore, that it does not tend to connect him with the offense.

In our opinion the position is not well taken. In *Stevenson v. Belknap*, 6 Iowa, 97 (103), the court said: "We believe that all the authorities concur that seduction is generally made out by a train of circumstances, among which may be enumerated courtship, or continued attention for a length of time." See, also, *State v. Wells*, 48 Iowa, 671. Courtship affords not simply the opportunity, but the very means of persuasion by which seduction is effected. The testimony of the prosecutrix is sufficient to establish the fact of seduction. It is competent though not sufficient evidence that the defendant was her seducer. The fact that he was her suitor, proven otherwise than by her own testimony, tends to make credible her testimony that her proven seduction was effected by him. The corroboration, while by no means conclusive, must impress every one who has any knowledge of human nature as exceedingly cogent.

X. The court was asked by the defendant to instruct the jury that in order to convict it was necessary that they should be satisfied, beyond a reasonable doubt, that the prosecutrix was induced to yield to the defendant by promises, arts, deceptions, or flattery. The court refused to so instruct and the refusal is assigned as error.

The court instructed very clearly as to what is necessary to constitute the crime of seduction. The court said: "The mere fact of illicit intercourse between the defendant and prosecutrix, if established, does not itself establish the charge of seduction. It is necessary that the evidence should further show that her consent to such intercourse was obtained by false promises of marriage, protestations of love, flattery, deception, or other seductive means or artifices, employed by the defendant for a greater or less length of time prior to such intercourse." The court also instructed the jury that in order to convict they should be satisfied of the defendant's guilt beyond a reasonable doubt. The defendant, however, claims that this is not sufficent; that he was entitled to have

the jury instructed that they must be satisfied that he used seductive means beyond a reasonable doubt.

It is certain that the jury was not justified in convicting if they had a reasonable doubt as to the use of seductive means. But it is impossible that they should have a reasonable doubt upon that point and have none as to the defendant's guilt. The most that can be said in support of the defendant's position is that, as the court defined the crime in one instruction, and in another the certainty that the jury should have that the defendant committed the crime, the jury, in passing from the former to the latter, might forget the former. But we are not allowed to suppose that they might commit such error. It is sufficient if the crime is defined in the charge, and the jury is instructed that they must acquit if they have a reasonable doubt that the defendant committed the crime. We think the court did not err in refusing to instruct as asked.

XI.   The defendant asked the court to give an instruction, which is as follows: "If you find from the evidence that the prosecutrix has, since the commission of the alleged offense, admitted that in charging the defendant with her seduction she had stated a falsehood, you should carefully consider such fact, if proven, in determining the credibility of her testimony given before you on this trial." The court refused the instruction, and the defendant assigns the refusal as error.

It is a matter of course, if the prosecutrix admitted that her charge of seduction against the defendant was false, that such admission should impair the credibility of her testimony. But the evidence does not quite show that she admitted that her charge was false. It only shows that upon the preliminary examination she admitted that she testified falsely. It was for the jury to determine whether the admission of falsehood, if made, was meant by her as an admission of falsehood upon the main point, and not for the court to assume that it was. Besides, if the instruction asked had been drawn strictly in accordance with the evidence, we do not think it would have been reversible error to refuse it. The impeach-

ing evidence was in for what it was worth. The defendant had the full benefit of it. There was no possibility that the jury should suppose that they were not to consider it. The only office of the instruction asked was to emphasize it; but that was the privilege of his counsel, and not the duty of the court—at any rate not its imperative duty.

An instruction was given by the court covering the ground in general terms, and we think it is all that the defendant could properly demand. The court said: "In determining the credibility of the witnesses, and the weight to be given to the testimony of each, you should take into consideration the consistency or inconsistency of their statements with each other, and with prior statements made by them, if any."

XII. The defendant asked an instruction which is as follows: "It is perfectly natural and to be expected that the prosecutrix should, so far as possible, shield herself, and cast the blame, if any there was, on the defendant. There should not, therefore, be any strained construction put on her testimony to sustain a verdict of guilty against the defendant. On the contrary, as the defendant is entitled to the benefit of all reasonable doubts there may be as to his guilt, the language and testimony of the prosecutrix should receive no other construction than its fair and natural meaning may entitle it to." The court refused the instruction, and the refusal is assigned as error.

6. ——: ——: instruction.

The instruction is drawn substantially in language used in the opinion in *State v. Haven*, 43 Iowa, 181. In that case the court was of the opinion that the verdict could not be sustained without putting a strained construction upon the testimony of the prosecutrix. The statement that a strained construction should not be put upon the testimony was made, probably, in reference to a claim made by the Attorney General that the court should not set aside a verdict where there is some evidence to sustain it.

In a case where the trial court should be of the opinion that a verdict of guilty could not be found without putting

such construction upon the testimony it would, doubtless, be proper to give such instruction as was asked by way of caution; but it would not, we think, be reversible error to refuse it in any case. If the verdict cannot be sustained without putting a strained construction upon the testimony of the prosecuting witness it should be set aside for that reason. If it can be sustained the instruction has no special relevancy, and certainly it cannot properly be claimed that every defendant in a criminal case has a right to an instruction cautioning the jury against putting a strained construction upon the testimony of the prosecuting witness.

XIII. The defendant asked an instruction to the effect that the State relied solely upon an alleged promise of marriage as the means of seduction, and that if the jury failed to find such promise beyond a reasonable doubt they should acquit. The instruction was refused, and we think properly so. It does not appear that the State relied solely upon a promise of marriage. It showed, in evidence, that the defendant was the prosecutrix's acknowledged suitor through a long period of time; that he visited her by day and by night, at home and abroad, and enjoyed her society in company and alone; that she became deeply attached to him, and loved him in sunshine and storm, and was determined to marry him, though against the protests of her family. We think that the State showed the employment of effective means of seduction in addition to a promise of marriage.

XIV. The defendant asked an instruction to the effect that the jury must acquit if they found, from the testimony 7. ——: ——: of the prosecutrix, that prior to her alleged seducprevious char- tion she was not a woman of chaste character. acter. The court refused to so instruct, and instructed the jury to the effect that every woman is presumed to be of chaste character until it is otherwise shown, and that the burden of overcoming the presumption is upon the defendant.

The defendant complains because he claims that the evidence of prior unchastity is to be found largely in the prose-

cutrix's own testimony, and that the jury might conclude from the instruction that such evidence was not to be considered as not proceeding from the defendant.

If the prosecutrix's own testimony proved prior unchastity it would be so clearly sufficient that we cannot think that any juror could be misled.

XV. The court instructed the jury that their duties were simple. The defendant complains because the jury might infer that the facts claimed to be established were established, or at any rate might be led to omit that careful consideration of all the evidence which the case demanded.

The instruction, we think, is hardly to be approved. We are unable to discover any good purpose that it could serve. But in this case if it was error we think it was without prejudice. The court gave seventeen elaborate instructions, setting forth with great fullness the law as applicable to the case, and guarding, so far as we can see, against the possibility of mistake. If, in the outset of the charge, the jury was unduly impressed with the simplicity of the case, we think that the impression was erased before the charge was digested.

XVI. The defendant complains of an instruction which was given to the effect that in determining whether, in case the defendant had illicit intercourse with the prosecutrix, her consent was gained by the employment of seductive means, they might consider what took place subsequent to the alleged seduction, as well as prior to and at the time of it. It is insisted that what took place subsequent to it is immaterial.

8. ——: ——: prior and subs quent conduct.

The evidence tends to show that the defendant was the suitor of the prosecutrix for some two years prior to the first illicit intercourse, and nearly a year afterward. We think that the jury was entitled to consider the entire period of the defendant's courtship as indicating whether, at the time of the intercourse, he was purposely soliciting the prosecutrix's affections, and awakening in her just expectations of marriage.

XVII.   The indictment charges that the seduction was effected on the 2d day of April, 1876.   The court instructed the jury that it was not necessary to find that the offense was committed on that day, but that it would be sufficient to justify a conviction if they found that the offense was committed at any time within eighteen months prior to the day on which the indictment was found.   This instruction is assailed upon the ground that there is no evidence of seduction at any other time.   But there is evidence of illicit intercourse subsequent to the 2d of April.   If her seduction was not effected upon that day we think the evidence was sufficient to justify the jury in finding that it was effected upon a subsequent day. It is true she testifies positively that it was effected on the 2d of April.   But it is not for us to say that if the jury believed that she testified falsely as to intercourse upon that day they must necessarily disbelieve her testimony as to her intercourse upon a subsequent day.

XVIII.   The defendant insists that the verdict is contrary to the evidence.   He insists that he has raised a valid doubt as to a definite, subsisting engagement at the time of the alleged intercourse; but there are seductive means which fall short of a definite promise of marriage.   He insists that he has shown by her letters to him that she was unchaste, but the evidence tends to show that he continued his courtship not-withstanding.   He insists that the evidence shows that she tried to seduce him.   She wrote him devoted epistles.   She urged him to visit her.   She watched for him at the window. Whether in this she exceeded the bounds of propriety would depend upon circumstances.   If she was engaged to him, or had been engaged to him and desired to effect a reconcili-ation, it would seem that much demonstration of affection on her part would be pardonable.

In our opinion the verdict is sustained by the evidence, and the judgment must be.

AFFIRMED.