## The State v. Sopher.

1. **Criminal Law:** JURORS: COMPETENCY: OPINION FORMED. An opinion formed in respect of defendant's guilt, based on pretended facts learned from newspapers or otherwise, does not disqualify one to act as a juror, where the juror, upon his examination, states that his opinion is subject to change upon his learning that the facts differed from what he supposed them to be, and that his opinion would not prevent him from rendering a true verdict according to the evidence given on the trial. (Compare *State v. Bruce*, 48 Iowa, 530.)

2. ——: EVIDENCE: ADMISSIONS TO OFFICER WHILE IN CUSTODY. An officer may testify to admissions made to him by the defendant, while in his custody, where the admissions are freely and voluntarily made, without being influenced by hope or fear, and without being drawn out by questions asked by the officer. (Compare *State v. McLaughlin*, 44 Iowa, 82.)

3. ——: HOMICIDE: CAUSE OF DEATH: NEGLIGENCE OF SURGEONS: EVIDENCE. Where the evidence was conflicting as to the skill with which the wounds made by defendant upon decedent were treated by the physicians and surgeons who attended him, it could not be claimed with reason that a verdict of murder in the first degree should have been set aside on the ground that death resulted from want of surgical skill, and not from the wounds.

4. **Instructions:** JURY CHARGED TO "COUNSEL" AND WEIGH THE EVIDENCE. In this case the jury were instructed that they should determine a certain point "after *counseling* and weighing carefully the evidence." *Held* that, though the word "counseling" in the record was doubtless, by a clerical error, put in place of the word "considering," used in the instruction, yet, taking it as it stands, the instruction was not unintelligible nor erroneous, as the jury would understand therefrom that they were to interchange views and reasons in weighing the evidence.

5. **Homicide:** INTOXICATION OF DEFENDANT: LIQUOR FURNISHED BY DECEASED. Where the homicide was committed while the defendant was intoxicated, *held* that the court properly instructed the jury that if the defendant became intoxicated, in whole or in part, upon liquor furnished him by or at the request or solicitation of the deceased, this would not prevent the intoxication from being voluntary within the meaning of the law.

6. **Murder:** POWER OF JURY TO FIX PENALTY: CONSTITUTIONALITY OF STATUTE. *State v. Hockett, ante,* 442, followed.

7. ——: PREMEDITATION: INSUFFICIENT EVIDENCE. Where the evidence showed that the fatal stabs were given in a conflict while defend-

ant was excited by intoxicating liquors, if not intoxicated, and there was nothing tending to show that after the conflict began there could have been, before the stabbing, a moment,—an instant of time,—for deliberation and premeditation, *held* that a verdict of murder in the first degree should have been set aside as unsupported by the evidence.

*Appeal from Mahaska District Court.*

TUESDAY, DECEMBER 21.

DEFENDANT was convicted of murder in the first degree, and was sentenced to the penitentiary for life, in accord with the verdict of the jury fixing the punishment. He now appeals to this court.

*W. S. Kenworthy*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

BECK, J.—I. The defendant was convicted of the murder of his father, Moses H. Sopher, Sr. The evidence tends to establish the following facts: The deceased, defendant, and another man, named Dunn, in June, 1884, visited in company a village in the neighborhood of the residence of deceased. They rode together in a spring wagon. The defendant was then about twenty-one years of age, and married; the father, about forty-two. While in the village they all drank intoxicating liquors, and two of them carried with them away from the town bottles containing the same kind of liquor. They were under the influence of the liquor, and to some extent intoxicated, while pursuing their way homeward. An altercation arose among them, and the father used violence towards the son, who, in a conflict, inflicted eleven wounds upon the father with a pocket knife, all of them upon the breast, belly and abdomen, except one upon the thigh. One of the wounds in the belly penetrated the cavity of the body, causing death from injuries inflicted upon the bowels. The record discloses the old story, so frequently repeated in the proceedings of our courts, of crime

committed while the criminal is under the maddening influence of intoxicating liquors. By this crime two families are broken up; the father of one being consigned to the tomb, and of the other to the penitentiary for life. The county is subjected to great expense, and humanity disgraced by a patricide. Whence this dreadful crime? From the traffic in intoxicating liquors, forbidden alike by the laws of God and man.

II. We will proceed to consider the various objections to the judgment raised by defendant's counsel in this court.

1. CRIMINAL law: jurors: competency: opinion formed. Certain jurors were challenged by defendant for cause, on the ground that they disclosed in their respective examinations upon *voir dire* that each had formed and expressed an opinion as to the guilt of defendant, which rendered him incompetent to sit in the case. Each stated in substance that he had knowledge of facts said to be connected with the crime, gained from newspapers or otherwise, upon which he had formed an opinion as to defendant's guilt or innocence; but such opinion was subject to change or modification, upon the juror's learning that the facts differed from information which he had before acquired, and that the opinion he entertained would not prevent him from rendering a true verdict upon the evidence to be submitted at the trial. Such an opinion does not render a juror incompetent. Code, § 4405. And the juror himself may show on his *voir dire* that his opinion is of this character. *State v. Bruce*, 48 Iowa, 530.

III. Certain admissions of the defendant to the effect that he committed the crime were made to the officer who

2. ——: evidence: admissions to officer while in custody. first arrested him while he was in the officer's custody. The officer testified to these admissions, against defendant's objection. It appears that the admissions were freely and voluntarily made, and were not influenced by hope or fear, and were not even made in response to questions asked by the officer. The evidence was rightly admitted, and no objection can be based upon

the fact that the admission was made to the officer while defendant was in his custody after the arrest. *State v. Mc-Laughlin*, 44 Iowa, 82.

IV.  Counsel insist that the verdict ought to have been set aside by the court below, for the reason that the evidence shows death resulted from the negligence and want of professional skill of the physician and surgeon who attended the deceased after he received the wounds.  We need not inquire whether the facts alleged by counsel, if established, would be a mitigating circumstance demanding a different verdict, for the reason that the evidence upon the questions of care and skill exercised by the physician is conflicting, and the jury may well have found that the wound causing death was necessarily mortal, and no treatment, however skillful and careful, would have saved the life of the wounded man.

*3. ———: homicide: cause of death: negligence of surgeons: evidence.*

V.  Upon the branch of the case considered in the preceding point, the district court gave the jury an instruction in the following language: "Whether the wound claimed by the state to be mortal was or was not in fact such, or, if not mortal, whether death resulted solely from mismanagement or maltreatment, you should determine after counseling and weighing carefully and fairly all the evidence relating to such wound and its treatment, including the opinions of the physicians or surgeons who testified in the case in relation thereto."  Counsel for defendant insists that this instruction is unintelligible, and was misleading in its effect upon the minds of the jurors.  This position is based upon the word "counseling" found in the instruction as presented in the transcript before us.  We have no doubt that the word is found in the transcript through a clerical mistake, and that the word used in the instruction is "considering."  But if we regard the transcript as correct, which we are bound to do in the absence of any showing of mistake, we do not think it unintelligible and misleading, while we regard the

*4. INSTRUCTIONS: jury charged to "counsel" and weigh the evidence.*

word complained of as unhappily chosen. The thought conveyed by the word "counseling," as it doubtless was understood by the jurors, is that, after an interchange of views and reasons, they should carefully and fairly weigh the evidence bearing upon the question of the want of care and skill on the part of the physician. In our judgment no prejudice could have resulted to defendant from the instruction.

VI. The district court instructed the jury in the following language: "If you find that defendant became intoxi-

5. HOMICIDE: intoxication of defendant: liquor furnished by deceased.

cated, in whole or in part, upon liquor furnished him by or at the request or solicitation of the deceased, this would not prevent the intoxication from being voluntary within the meaning of the law." The instruction is correct. The mere fact that deceased furnished defendant with the intoxicating liquor would not tend to show that the intoxication was involuntary. There is nothing in the relation of the parties, nor any fact disclosed by the record, tending to show that defendant did not drink the liquor voluntarily, and without persuasion or coercion.

VII. Counsel for defendant also insists that the statute authorizing the jury to determine whether the punishment

6. MURDER: power of jury to fix penalty: constitutionality of statute.

for murder in the first degree shall be death or imprisonment for life, is in conflict with the constitution, and therefore void. This question is determined in *State v. Hockett*, *ante*, 442, and requires no further discussion in this case.

VIII. An instruction, the fourth, given to the jury is in this language: "Whenever there is a deliberate intention to

7. ——: premeditation: insufficient evidence.

take human life, and life is taken in pursuance of such intention, and the killing is not justifiable or excusable, nor done under sufficient provocation to reduce the offense to manslaughter as hereinafter explained, then such killing is murder in the first degree; and it is not necessary that such premeditation or intent to kill should have existed for any particular length of time

before the killing. If it actually exists at the time of the killing, and the killing is the result of a formed and determined design to take life, and is without legal excuse, justification, or provocation, then the killing is willfully, deliberately and premeditately done, within the meaning of the law." An instruction identical in language is criticised in *State v. Hockett, supra*, and, while not held bad by a majority of this court, is regarded by the chief justice as positively erroneous. The rule announced in it is surely not clearly expressed, though doubtless, as understood by the court, is correct. We fear that the language may not always be understood by jurors, and that they might, in attempting to follow it, fail to find premeditation and deliberation preceding the very act causing death, yet would return a verdict of murder in the first degree. The jury should have been directed that, while it is not necessary that premeditation, deliberation and intent to kill should have existed for any particular length of time before the killing, yet the intent to kill should have preceded the act of killing long enough to admit premeditation and deliberation; and as to whether there was such time the jury are the judges. But, regarding the instruction as correct, and assuming that the jury were not misguided by its somewhat obscure and uncertain language, and really found that deliberation and premeditation did precede the act resulting in death, in accord with the language we have just used in our opinion, the evidence utterly fails to authorize the conclusion that deliberation and premeditation on the part of defendant did precede the fatal stabs causing death. They were given in a conflict while defendant was excited by intoxicating liquors, if not intoxicated. There is no evidence tending to show that after the conflict began there could have been, before the stabbing, a moment,—an instant of time,—for deliberation and premeditation. Certainly, there is not one word of evidence tending to prove that, before the conflict commenced, there was premeditation and deliberation. We therefore conclude that

the finding of the jury to the effect that there was delibera-
tion and premeditation, upon which the verdict of murder in
the first degree is based is utterly unsupported by the evi-
dence, and should have been set aside upon this ground by
the district court.   For the error in failing to do so the
judgment is

REVERSED.