STATE OF IOWA, Appellee, v. JAMES C. ANDERSON, Appellant.

No. 46996.

(Reported in 33 N. W. 2d 1)

June 15, 1948.

Rehearing Denied September 24, 1948.

John J. Hess, of Council Bluffs, and William P. Welch, of Logan, for appellant.

Robert L. Larson, Attorney General, Clarence L. Kading, Assistant Attorney General, Don H. Jackson, County Attorney, and David E. Stuart, Assistant County Attorney, for appellee.

MANTZ, J.—On September 5, 1946 the grand jury of Pottawattamie County, Iowa, returned an indictment wherein the defendant, James C. Anderson, was charged with murder in the second degree, in that the said defendant, "on or about the 23d day of April, 1946, in the County of Pottawattamie and State of Iowa * * * did wilfully, feloniously, and with malice aforethought kill one Marion Blythe by wilfully and feloniously using instruments and other means upon the person of Marion Blythe with the intent to procure a miscarriage on the said Marion Blythe, such miscarriage not being necessary to save the life of the said Marion Blythe."

To this indictment the defendant entered a plea of not guilty. The case was tried, and on October 5, 1946 the jury returned a verdict finding the defendant guilty of murder in the second degree. Thereupon the defendant filed a motion to set aside the verdict and grant a new trial; a motion in arrest of judgment; amendment to motion for new trial and exceptions to instructions and to the court's refusal to give requested instructions.

All of these motions were overruled and exceptions taken. Thereafter the court entered judgment on the verdict and sentenced defendant to serve a term of twenty years in the state penitentiary at Fort Madison, Iowa, and to pay the costs. Defendant appealed.

I. Appellant in this appeal has set forth numerous claimed errors. These were set forth in his original brief and argument filed in this court on August 11, 1947. On December 2, 1947 appellant filed an amendment to his original brief and argument without permission from this court. In this amendment some of the claimed errors as set forth in the original brief are amended and subdivided, others are elaborated upon. At the same time he filed an amendment to the record. This manner of presentation has been confusing. In some of the assignments no authorities are cited. Due to the nature of the case and its importance to defendant, we have carefully gone

over the record and considered the various assignments. In this opinion we have not followed the order of the various assignments and arguments as set forth by appellant.

II. Appellant urges as error the ruling of the trial court wherein the challenges to four prospective jurors were overruled. The challenges were along similar lines, to wit, for cause. Later appellant argued that each of said tendered jurors had formed and expressed an opinion as to the guilt or innocence of appellant; also, that they were prejudiced and that the opinion which they had formed would prevent such jurors from rendering a true verdict, upon the evidence submitted on the trial.

The juror Mamie Walker stated that she was not acquainted with appellant; that she had read about the case in the papers and had discussed it with friends and acquaintances; that she thought she had formed an opinion as to the guilt or innocence of appellant; that she did not believe that such opinion would interfere with her acting as a fair and impartial juror, and that she would listen to the evidence and the court's instructions and would return a fair and impartial verdict in accordance therewith. On cross-examination she said that if accepted as a juror she would take with her an opinion as to the guilt or innocence of the defendant and that it would take evidence to remove it. Thereupon, the defendant (appellant) challenged the juror for cause. The court then examined the juror:

"By the court: Do you think you made up your mind with respect to the guilt or innocence of the defendant that it couldn't be changed by evidence? A. No, I haven't. Q. Could you disregard the opinion that you have at the present and try the case solely on the evidence that you are going to hear, that is going to be brought out, and the instructions of the court? A. I believe I could. Q. And that is what you would do if selected to sit as a juror? A. Yes, sir. By the court: The challenge is overruled." Defendant excepts.

The record made as to the three other challenged jurors was substantially the same as that set out above. There was a challenge to each prospective juror. In each instance the

challenge was "We challenge the jury for cause" or "The juror is challenged for cause." Each of the challenges was overruled by the trial court. The ground of the challenge was not specific and does not follow the rules laid down in some of our cases dealing with that matter. In the case of Haggard v. Peterson, 107 Iowa 417, 419, 78 N. W. 53, 54, a juror was being examined as to his feeling or bias in the case. The challenge was in these words: "The plaintiff challenges the juror for cause." This court held that the challenge was too indefinite in not stating the grounds. Citing Davis v. Anchor Mut. F. Ins. Co., 96 Iowa 70, 64 N. W. 687; Bonney v. Cocke, 61 Iowa 303, 305, 16 N. W. 139, 140. In the last-cited case challenge was made to certain jurors for "cause." This court in holding the challenge was insufficient said:

"An objection simply for cause is too indefinite, and it was correctly overruled for that reason; and this is also true as to a challenge, unless there is a statement of the ground upon which it is based."

See, also, Payne v. Waterloo, C. F. & N. Ry. Co., 153 Iowa 445, 133 N. W. 781; State v. Munchrath, 78 Iowa 268, 271, 43 N. W. 211.

The record tended to show that some of the prospective jurors had opinions as to the guilt or innocence of the defendant and stated that they got such opinion from having heard others talking of the case and from reading newspaper reports. None of them stated that any opinion held was an unqualified one, and all said that they would hear the evidence, be guided by the instructions of the court, and decide the case upon its merits.

Assuming for the purpose of the argument that the basis of the challenge was evident and the cause shown, still we hold that the challenge was not good. See State v. Rhodes, 227 Iowa 332, 336, 337, 288 N. W. 98, 100; State v. Reed, 205 Iowa 858, 216 N. W. 759; State v. Harding, 205 Iowa 853, 216 N. W. 756. We call particular attention to the case of State v. Rhodes, supra. That was a murder case. There a prospective juror stated that he knew nothing which would prevent him from sitting as a fair and impartial juror; that he would carefully

consider the evidence, would be guided by the instructions, and would base his verdict solely on the evidence introduced. Upon examination by the defendant he stated that he had read the newspaper accounts of the alleged crime and had heard the case discussed and had discussed it some; that he supposed what he heard and read was true; that from such he had some opinion as to the guilt or innocence of the defendant and that from such he had a fixed opinion and that such opinion would require some evidence to the contrary to remove it; that he supposed he could change such opinion if he heard evidence to the contrary; that if he heard no such evidence to change his opinion he would still have it during the trial. " 'Q. And this opinion you have already formed would influence your verdict in this case if you sat as a juror? A. Well, it may.' "

There was a challenge for cause, in that the juror had a fixed opinion as to the guilt or innocence of the defendant. Upon re-examination the prospective juror stated that his opinion was based solely upon what he had read in the newspapers; that he did not know if it was true or not; that he would give the defendant the benefit of the presumption of innocence and that he could lay aside his opinion and decide the case solely and entirely upon the evidence introduced on the trial of the case; that he thought he could and would do this. The trial court thereupon propounded to the prospective juror the following:

" 'Q. Do you feel that this opinion which you may have formed, would in any manner interfere with your rendering a fair and impartial verdict if you are chosen as a juror? A. I don't think so. Q. You don't think so. A. No. The court: The challenge for cause is overruled.' "

In the case of State v. Vatter, 71 Iowa 557, 32 N. W. 506, the court called attention to the distinction between a qualified and unqualified opinion of a prospective juror. The court held that the whole examination of the juror is to be considered.

We set out from the holding of the court in the Rhodes case, supra, as shown on page 338 of 227 Iowa, page 101 of 288 N. W.:

"The entire examination of Mr. Zenishek satisfies us that he had not formed an unqualified, fixed opinion as to the guilt of appellant. His opinion was based solely on hearsay and on the hypothesis that what he had read and heard was true. He repeatedly testified that he could and would lay aside his opinion and decide the case solely on the evidence and the instructions of the court. The fact that he had an opinion which would require evidence to remove does not, in the light of the entire examination of the juror, establish that he had formed an opinion as to the guilt of appellant that would prevent him from rendering a true verdict upon the evidence submitted on the trial of the case. State v. Lawrence, 38 Iowa 51; State v. Bruce, 48 Iowa 530, 30 Am. Rep. 403; State v. Sopher, 70 Iowa 494, 30 N. W. 917; State v. Vatter, 71 Iowa 557, 32 N. W. 506; State v. Smith, 73 Iowa 32, 34 N. W. 597; State v. Bone, 114 Iowa 537, 87 N. W. 507; State v. Brown, 130 Iowa 57, 106 N. W. 379; State v. Ralston, 139 Iowa 44, 116 N. W. 1058; State v. Hassan, 149 Iowa 518, 128 N. W. 960; State v. Teale, 154 Iowa 677, 135 N. W. 408; State v. Williams, 197 Iowa 813, 197 N. W. 991; State v. Harding, 205 Iowa 853, 216 N. W. 756; State v. Reed, 205 Iowa 858, 216 N. W. 759; State v. Wheelock, 218 Iowa 178, 254 N. W. 313."

This court has likewise held that in passing upon challenges interposed to prospective jurors, the trial court may exercise discretion in ruling thereon. We held in State v. Harding, supra, that the court is vested with discretion in determining whether a juror is disqualified and that there is no reversible error unless abuse of discretion is shown. See, also, State v. Reed, supra, and cases above cited. Appellant relies upon the holding of this court in State v. Reed, 201 Iowa 1352, 1353, 208 N. W. 308 (former appeal in State v. Reed, 205 Iowa 858, 216 N. W. 759). Therein the prospective juror testified that he did not think that he could enter the trial of the case, knowing what he did about it and still give the defendant the benefit of the presumption of innocence. Such a condition of mind of a juror shows a disqualification. However, in the instant case no such disqualification was shown. Indeed, the contrary appears when we consider the whole record.

The above rule can be applied to the record of the challenges to jurors in the instant case. The entire record fails to show that any of the challenged jurors were disqualified—indeed, the contrary appears. We do not find that the holdings of this court on such matter in the Rhodes case, the Harding case, and the Reed case have been criticized or overruled. We hold that the trial court did not abuse its discretion in overruling the challenges.

III. The appellant claims that the trial court erred in overruling his motion for a directed verdict made when the State rested, and renewed at the close of all the evidence.

The record shows that such motions were overruled and exceptions taken.

Appellant in argument states that as to this claimed error the only question presented is, "Was there competent evidence presented by the State that would justify the submission of this cause to the jury for its determination?"

█ In considering the evidence we are necessarily guided by certain rules. In criminal cases the case should be submitted to the jury if there is substantial evidence tending to support or reasonably tending to support the charge. This rule was first enunciated in the case of Franks v. State, 1 (Greene) Iowa 541, and has since been followed in this state. State v. Smith, 28 Iowa 565; State v. Heath, 224 Iowa 483, 276 N. W. 35, and cases there cited. State v. Lowenberg, 216 Iowa 222, 243 N. W. 538; State v. Manly, 211 Iowa 1043, 233 N. W. 110; State v. Kinart, 196 Iowa 492, 193 N. W. 413; State v. Cordaro, 206 Iowa 347, 218 N. W. 477; State v. Woodruff, 208 Iowa 236, 225 N. W. 254; State v. Traas, 230 Iowa 826, 298 N. W. 862.

The evidence may be direct or circumstantial. State v. Manly, supra; State v. Heinz, 223 Iowa 1241, 275 N. W. 10, 114 A. L. R. 959; State v. Carlson, 203 Iowa 90, 212 N. W. 312.

██ In considering the motion for a directed verdict the evidence is to be construed in the light most favorable to the party against whom the motion is directed. State v. Wilbourn, 219 Iowa 120, 257 N. W. 571; 23 C. J. S., Criminal

Law, section 1145(c7). In the case of State v. Woodruff, supra, we had before us the question of the sufficiency of the evidence to warrant the court in submitting the case to the jury. A verdict was directed in favor of the defendant. This court, in reversing the action of the trial court, said at page 245 of 208 Iowa, page 257 of 225 N. W.: "It is not for us to determine the facts. Our sole duty is to determine the proper rules of law applicable to the facts." Where there is competent evidence tending to support the verdict the judgment is final. State v. De Kraai, 224 Iowa 464, 276 N. W. 11; State v. Pray, 126 Iowa 249, 99 N. W. 1065.

Before the appellant could be convicted of the offense charged, the State must show by the evidence beyond a reasonable doubt, all of the following: (1) A willful use of instruments or other means upon the decedent, Marion Blythe (2) that he used such instruments or other means with the intention to procure a miscarriage on the said Marion Blythe (3) that such miscarriage was not necessary to save her life, and (4) that Marion Blythe died as a result of said miscarriage.

In order to determine whether or not there was in the record sufficient evidence to justify the court in submitting the case to the jury, we will examine the evidence as set forth in the record.

There was in the record evidence from which the jury could find that the appellant was a licensed physician and surgeon, fifty-eight years of age; that he was admitted to practice in 1909 and practiced in various places in South Dakota and Nebraska, being located for a time at Herrick, South Dakota, Waterloo, Oakland, and Holdredge, Nebraska, and coming to Council Bluffs, Iowa, in 1917, and had practiced at that place continuously down to the return of the indictment; that in April 1946 his home was in Omaha, Nebraska. Appellant as a witness admitted the foregoing.

There is evidence in the record from which the jury could find that Marion Blythe was twenty-five years old, was unmarried, had lived with her mother in Council Bluffs, and was employed in a bus station in Omaha; that she left her home on April 22, 1946 about three p. m. and returned home about six p. m.; remained home all that evening and worked at the family

ironing from 7:30 to 11 p. m.; then went to bed and remained at home until 11:30 a. m. April 23; that she called at the office of appellant about two p. m.; that she appeared to be in normal health and made no complaint to her people of pain or illness; that an examination revealed that she was about four and one-half months pregnant; that she had been there about a week previous to April 23 for an examination; that on April 23 when she returned to appellant's office she paid him $400 in cash, four one-hundred-dollar bills; that at said time appellant used instruments in various parts of Marion Blythe's womb pulling down the cervix, using a spectrum in the vagina, and by using a small probe packed a one-inch bandage into the cervix; that the purpose of placing the gauze pack was to produce labor and to procure a miscarriage; that following this, appellant called a taxi and directed the driver to take Marion Blythe to the residence of Jesse and Eva Middleton at 2411 South Twenty-third Street, Omaha, Nebraska; that when she arrived at the Middleton home she did not appear ill and did not complain of pain. There was also evidence from which the jury could find that at that time appellant had a working agreement with Mrs. Middleton for taking care of various patients of his and that this had existed for about a year and a half; also that for a number of years appellant had a working agreement with Dr. Campbell of Omaha to care for patients sent to the Middleton home by appellant. There is evidence that on Thursday forenoon April 25, 1946 about nine a. m., appellant saw Marion Blythe at the Middleton home; that Dr. Campbell was there; that they examined her; that they found that the fetus had passed, but not the afterbirth; that the girl was placed on an obstetrical table belonging to appellant and that appellant removed the afterbirth; that Marion Blythe died during the afternoon of April 25, appellant being notified by Dr. Campbell; that the two met at the Middleton home about midnight and discussed the disposal of the body; that Middleton insisted that the body be taken from his home and appellant and Campbell stated that it would be thrown in the river; that appellant and Dr. Campbell put the clothing on the body of deceased and carried it

out into the alley and placed it in the turtleback of appellant's automobile and then, with appellant driving, crossed over into Council Bluffs; then, after some discussion drove down on what is called the Manawa Road and stopped on the South Omaha Bridge where appellant, Campbell, and Middleton threw the deceased, fully dressed, into the Missouri River; that this happened about one a. m. April 26, 1946. There was evidence that during the night and the trip, appellant and Campbell indulged freely in the use of intoxicating liquor; that the body was found floating in the river the next morning, and Dr. George McArdle was called by the coroner of Sarpy County, Nebraska; that Dr. McArdle was a practitioner of thirty-two years' experience as a physician and surgeon and had treated about one hundred and fifty miscarriage cases during that time; that he performed an autopsy on the body of Marion Blythe and found no water in her lungs. We quote a part of his direct examination:

"Q. Doctor, from your experience for a number of years, and from your findings upon the body of this girl [deceased] from the autopsy that you performed upon the body, can you state in your opinion the cause of the death of the girl? A. Yes. Q. Will you tell the jury your opinion as to the cause of the death of the girl that you made an examination and autopsy upon in the Clair Funeral Home on the morning of April 26, 1946?

"By Mr. Welch: Objected to as incompetent and calling for a conclusion of the witness; no proper foundation laid on which he could express such an opinion.

"By the court: Overruled. Defendant excepts.

"A. It was an abortion, contributory hemorrhage and acute peritonitis. Q. As I understand you now, that was the cause of the girl's death in your opinion? (same objection, same ruling, exception) A. Abortion."

The record shows that following the finding of the body of Marion Blythe and the autopsy by Dr. McArdle, the appellant was taken to the police station in Omaha, Nebraska, and while there made a statement concerning the matter under inquiry. At first appellant denied having had anything to do with any

treatment of Marion Blythe at his office in Council Bluffs, or any connection with her death. Later he was confronted with the taxi driver who told that he was called to appellant's office on April 23, 1946, and that while there he was directed by appellant to take Marion Blythe to a certain address in Omaha; and was also confronted with Jesse Middleton who told of the coming of Marion Blythe to his home in Omaha and the visits of appellant and Dr. Campbell, and the death and disposal of the body by casting it into the Missouri River. Thereupon appellant made a statement to the officials. This was taken down by a shorthand reporter and was almost entirely in the form of questions and answers. This statement was exhibit 6 and was introduced in evidence. Nowhere in this statement did appellant claim that what he did was necessary to save the life of Marion Blythe. On the contrary, he stated: "I tried to talk her out of the whole God damn mess. * * * That ruins me and all my prospects, just trying to help a girl in something." His statement covers fifteen pages of the printed record. The record shows that it was given freely and voluntarily and after the appellant had been advised as to his constitutional rights. In the statement appellant told of the visits of Marion Blythe to his Council Bluffs office, her payment to him of the $400, of sending her to the Middleton home, her treatment there, her death, and later the disposal of her body. It is rather significant that appellant made no record of his treatment of Marion Blythe. He stated that he kept a record of all legitimate cases. Later, as a witness, he offered an explanation of what he meant by the term. His testimony on the trial varies in some important particulars from the statement given. As a witness he detailed the visits of Marion Blythe to his office, his treatment of her there; also, of sending her to Omaha, the treatment there, her death, the cause thereof, and the disposal of the body. Appellant, as a witness, stated that when Marion Blythe first came to his office she was then having a miscarriage and what he did was to give her treatment for such condition and that what he and Dr. Campbell did was necessary and proper to save the life of Marion Blythe. He testified that when Marion Blythe came to his office for treatment she told

him that she was pregnant and that a "boy friend" had given her some tablets to induce or procure a miscarriage; that she had taken a quantity of such tablets and that she needed treatment. No other witness testified on behalf of appellant.

In rebuttal, the State offered two medical witnesses—both men of experience and unquestioned ability. Dr. J. B. Thornell, of Council Bluffs, a specialist in obstetrics and pediatrics for nineteen years, testified that in his opinion the tablets would not cause an abortion. Dr. Robert W. Collins, of Council Bluffs, a specialist on obstetrics and gynecology for ten years, testified that there is no drug which will produce an abortion. This witness, in connection with his medical practice, was an instructor in the department of medicine in the University of Nebraska.

Both Dr. Thornell and Dr. Collins gave testimony contradicting that of appellant regarding the treatment and cause of death of Marion Blythe; also corroborating the testimony of Dr. McArdle that her death was caused by an abortion.

Appellant complains that the court erred in permitting them to testify in rebuttal. When said witnesses testified objections were made by appellant to parts of their testimony. Later, motions were made to strike such testimony. We will in another part of this opinion, consider the objections so made and the motions to strike such testimony.

The record is long and we do not think that it would serve any useful purpose to set out the sordid details shown therein. Some of the evidence was of a circumstantial nature. This fact alone does not prevent its consideration. Circumstantial evidence is legal evidence and may be equal in value to, and sometimes more reliable than direct evidence. State v. Manly, supra; State v. Heinz, supra; State v. Carlson, supra; State v. Boyle, 230 Iowa 305, 297 N. W. 312.

Appellant's defense is based to a very large extent upon his own story. A jury could properly find and infer that his testimony when considered in the light of the admissions made by him on April 26, 1946 was not entitled to the credit or weight claimed for it. The unfortunate girl is dead. Appellant alone gives evidence as to what happened when she came to his office. The jury was not bound to accept his statement of what then took place as true. The entire picture from the time the

deceased went to his office, what took place there, her death and the disposal of her body, the acts and conduct of appellant when interrogated, his statement and later testimony, are all proper matters for the jury to consider in determining the guilt or innocence of appellant and arriving at a verdict.

IV. Appellant asserts and argues as errors the ruling of the trial court in relation to the testimony of Dr. Thornell and Dr. Collins, which was offered in rebuttal. Appellant objected to the testimony offered and later moved to strike the same on the ground principally that it was not rebuttal. He groups and argues these claimed errors together.

Some reference was made in the motion to strike that the opinions given by such medical witnesses were incompetent and of no probative force whatever.

The court ruled, permitting each of said witnesses to give an opinion based upon practice and experience specializing in the field of obstetrics and pediatrics as to the standard and recommended treatment in case of a threatened miscarriage. The specific objection was that the same was incompetent and not rebuttal. Appellant as a witness testified as to the proper method in such cases. As rebuttal it was proper and competent.

As a witness appellant had given testimony as to what he had done in carrying out and completing the miscarriage which he claimed was already taking place when Marion Blythe came to his office. He detailed the various steps and told the necessity therefor and the results to be expected. On rebuttal, Dr. Thornell and Dr. Collins had propounded to them hypothetical questions predicated upon the identical facts as testified to by appellant and they were asked whether the matters set forth by appellant could alone procure an abortion. It seems to us that the testimony of these two witnesses clearly tended to contradict the testimony of appellant.

In his original brief appellant assigns as Error No. II the action of the court in overruling appellant's motion to withdraw the evidence of Drs. Thornell and Collins as not rebuttal. In argument appellant cites various cases to support his claim. Some of these holdings are not applicable and some are against his position. He cites the case of State v. Parish, 22 Iowa 284. We think this case is authority to the contrary. The same is

true of the case of State v. Graham, 203 Iowa 532, 211 N. W. 244. Appellant likewise cites the case of State v. Crandall, 227 Iowa 311, 288 N. W. 85, 90. We do not see wherein this case supports appellant's claim. On page 319 we find the following:

"The order in which testimony may be introduced lies very largely in the discretion of the trial court. For that reason the court has never felt justified in reversing, 'unless upon the clearest showing of prejudice.'" Citing State v. Bruce, 48 Iowa 530, 30 Am. Rep. 403.

Later in the same opinion it is stated that while the testimony "may not be strictly rebuttal, if it has a tendency to disprove testimony on the part of the defendant, it is not prejudicial error to admit it." Citing, among other cases, State v. Graham, supra, cited and relied upon by appellant in the instant case. See, also, State v. Crandall, supra; State v. Curran, 51 Iowa 112, 49 N. W. 1006; State v. Slycord, 210 Iowa 1209, 232 N. W. 636.

We hold that the trial court properly admitted the testimony of Drs. Thornell and Collins in rebuttal. It tended to contradict the testimony of appellant and as such was admissible.

■■ V. Appellant sets forth as error the giving by the court of instructions Nos. 3 and 4. We do not think it necessary to set out in full the two instructions. No. 3 deals with and defines murder in the first degree; No. 4 deals with and defines murder in the second degree. Appellant before submission, and later and after the verdict, excepted to such instructions. The exception to instruction No. 3 is that it defines murder in the first degree; also, that such definition has no application to the charge made in the indictment against the defendant.

By separate exception, appellant excepted to instruction No. 3 in that murder in the first degree had no place in the case and was not germane to any issue presented by the indictment. A like exception to instruction No. 4 was made.

Appellant was charged with second-degree murder. Instruction No. 3 was intended to call the attention of the jury to the distinction of murder in the first degree from the degree charged in the indictment. We quote:

"You will observe that a definition of murder in the first degree is given above, while the defendant in this case is charged with the crime of murder in the second degree. Murder in the first degree has been defined to you only for the purpose of enabling you to distinguish the essential elements which constitute the two crimes."

In said instructions the court expressly told the jury the things necessary to be shown by the State to establish the crime of second-degree murder. Two forms of verdict were submitted to the jury: that of second-degree murder and not guilty. The jury was likewise told that if the evidence showed beyond a reasonable doubt that appellant attempted to or did procure a miscarriage on Marion Blythe and that it was not necessary to do so to save her life and that if death resulted from such miscarriage, then such act causing the death of Marion Blythe was murder in the second degree. Thus it would appear that the court was careful to define murder in the two degrees in order that the jury would have in mind a clear distinction between the two crimes. We are unable to see wherein the giving of the instruction defining first-degree murder under the record could have been prejudicial to appellant.

█ Appellant seems to argue that the court should have defined the crime of attempting to procure an abortion under section 701.1, Code of 1946. He cites no authority to sustain such claim. Dealing with such matter, we quote from the holding of the court in the case of State v. Rowley, 216 Iowa 140, 143, 248 N. W. 340, 341. Therein we said:

"It is the settled law of this state that a person who, in an unlawful attempt to [procure] a miscarriage, inflicts injury upon a woman, from which she dies, is guilty of murder in the second degree, unless the miscarriage was necessary to save her life." Citing State v. Moore, 25 Iowa 128, 95 Am. Dec. 776; State v. Moon, 167 Iowa 26, 148 N. W. 1001; State v. Leeper, 70 Iowa 748, 30 N. W. 501.

In State v. Rowley, supra, the defendant attempted to procure a miscarriage by the use of instruments and the patient died. The indictment in that case was based upon section 12973,

Code of 1939, which is identical in terms with section 701.1, Code of 1946.

■ VI. Appellant sets forth as error No. 10 that the court erred in overruling defendant's objection to certain testimony of Dr. McArdle offered by the State. The evidence objected to was the opinion of Dr. McArdle as to the cause of death of Marion Blythe. The particular objection was that the evidence was incompetent and a conclusion of the witness; no proper foundation had been laid on which the witness could express an opinion.

The appellant in his original brief starts his argument with reference to said claimed error: "Was a proper foundation laid to permit the witness Dr. McArdle to express an opinion as to the cause of this girl's death?" Following this, appellant sets out some of the things which Dr. McArdle did at the postmortem and then states: "We have grave doubts about the rights of this witness to have been permitted to express an opinion as to the probable cause of this girl's death."

We hold that the trial court did not err in permitting Dr. McArdle to express an opinion as to the cause of the death of Marion Blythe. He was speaking as an expert witness; he had been in the practice many years and no question could be raised as to his competency. He testified that during his experience he had handled numerous miscarriage cases. He was called by the coroner, performed an autopsy, described the condition of the body and the organs involved, and gave his opinion as to the cause of death. The specific objection was that his answer was a conclusion of the witness and that the witness was incompetent. There is no merit to this objection. This court has held that an expert witness may properly give a conclusion in certain cases. Grismore v. Consolidated Prod. Co., 232 Iowa 328, 5 N. W. 2d 646.

VII. Appellant urges as error the action of the trial court in permitting the State to make certain inquiries of witness Mrs. Eva Middleton and the comments of the court in permitting such examination. Mrs. Middleton was a witness for the State. She had testified before the grand jury and the minutes of her testimony were attached to the indictment.

As a witness she gave certain testimony some of which did not harmonize with that given before the grand jury. The State propounded questions to her touching such discrepancies and in so doing called her attention to certain parts of her testimony given before such body. Appellant objected to this line of questions stating among various grounds that the State was attempting to impeach its own witness. In overruling the objection the court said: "I think it is abundantly shown that upon this point the witness is hostile, and it is for that reason that I overrule the objection."

Without approving the comment of the trial court in the presence of the jury, an examination of the record convinces us that the court was right in the ruling. There can be but little doubt that Mrs. Middleton was a reluctant witness and gave evasive and unwilling answers to some of the questions propounded touching what she had testified to before the grand jury. The record shows that she could hardly be classed as a disinterested witness. She had a working agreement with appellant of many months' duration to care for patients sent her by appellant and Dr. Campbell. Marion Blythe died in her home and under circumstances from which it could be inferred that matters connected with an illegal operation had taken place therein. No doubt the publicity and notoriety given the incident and where it happened and the parties connected therewith were matters given some consideration by the witness.

Recently this court had occasion to pass upon a question similar to that raised herein in the case of State v. Holder, 237 Iowa 72, 20 N. W. 2d 909. This court (SMITH, J.) held that it was proper for a prosecuting attorney to inquire of his own witness if he had not on some other occasion given testimony in conflict with that being given later. See cases cited there and in particular that of State v. Walker, 133 Iowa 489, 110 N. W. 925; State v. Billberg, 229 Iowa 1208, 296 N. W. 396.

VIII. Appellant requested various instructions and took exception to the refusal of the trial court to give such instructions. Appellant dictated into the record requests for various instructions. He predicates error upon the refusal of the trial court to give requested instructions Nos. 1–6. We

fail to find any argument as to requested instructions Nos. 3-6, inclusive.

Requested instruction No. 1 as dictated into the record combines with the request a setting out of certain parts of the evidence and arguments in support of such request. It is rather long and sets forth therein matters other than the requested instructions. In effect it asks that the jury be instructed that the case of necessity as used in the instructions can ordinarily be determined only by medical opinion and that it naturally follows that a physician who examines a patient must form an opinion in good faith and must so act and that if he does so and acts upon it he is entitled to the presumption that he acted in good faith and that to overcome such presumption the State is required to show by evidence beyond a reasonable doubt that the appellant did not act in good faith and did not believe that the treatment was given properly and in good faith, or necessary under the circumstances he discovered at that time, and that if the State failed to establish all of these beyond a reasonable doubt the appellant should be acquitted.

Requested instruction No. 2 is somewhat similar to No. 1 and states that if appellant made a mistake this would not constitute the crime and that if upon examination of Marion Blythe it was found a miscarriage was only threatened and not inevitable that a mere mistake by appellant in diagnosing the miscarriage as inevitable, such mistaken judgment in diagnosis and in administering the treatment that he gave would not constitute the crime as charged and that the appellant should be found not guilty.

In his argument that the court should have given the requested instructions we find same commingled with claims that other instructions should have been given. The manner in which these claimed errors are presented is confusing. He cites no Iowa decisions to sustain his claim. In effect the appellant was asking that various detailed parts of the evidence be given the jury in the requested instructions. We think that the point there raised was covered by the instruction given. It is the rule that instructions must be taken and construed as a whole. State v. Mart, 237 Iowa 181, 20 N. W. 2d 63; State v. Parkin, 230 Iowa 991, 299 N. W. 917.

Another well-established rule is that if the point covered by the requested instruction is substantially given or covered by those given, the court may properly refuse to give such requested instructions. State v. Rowley, supra; State v. Mauch, 236 Iowa 217, 17 N. W. 2d 536; State v. Harness, 214 Iowa 160, 238 N. W. 430; State v. Ferguson, 226 Iowa 361, 283 N. W. 917.

We think that the matter urged in requested instruction No. 2 is covered by instruction No. 5 given by the court. Therein the jury was told that if in the exercise of proper professional judgment it appeared necessary to cause a miscarriage on a pregnant woman to save her life then such act is not in law considered an unlawful act, and if death results from the operation or the means employed to cause or procure such miscarriage, the physician performing the operation or employing the means to cause or procure the miscarriage is not deemed guilty of any offense against the law. Immediately following this the jury was told that if the evidence showed beyond a reasonable doubt that appellant did bring about a miscarriage substantially as charged in the indictment and that such miscarriage was not necessary to save the life of Marion Blythe and that she died as a result of such miscarriage, the act of the defendant would constitute murder in the second degree.

Instruction No. 5 given by the court when considered along with the other instructions given fairly and correctly advised the jury as to the matters set forth therein and, while not in the detail asked by appellant, did advise the jury as to the nature of the claim of defense as set forth by appellant. His claim was that what he did was necessary to save the life of Marion Blythe and that for a mistake of judgment he could not be held. We think that the jury was properly advised of this claim.

We hold that the court did not err in not giving the requested instructions Nos. 1 and 2.

IX. The appellant urges that the court erred in allowing over appellant's objection the testimony of Mrs. William Blythe and Evelyn Blythe, mother and sister respectively of Marion Blythe, touching upon the physical condition of Marion at the time mentioned in the indictment. The State

offered such testimony to support its claim that when Marion went to appellant's office for treatment in April 1946 she was in good health. Appellant discusses the evidence but cites no authorities to sustain his claim. He simply states that there was no competent evidence of any probative value as to the condition of Marion when she went to appellant's office. The record shows that the observations were made the very day Marion went to appellant's office. This evidence would be proper in that the State was required to show that it was not necessary to cause the miscarriage to save the life of Marion Blythe. We think that the witnesses were competent to give the testimony offered. They simply told what they had observed. Being in regular contact with Marion they were competent to give an opinion based upon observation. Such evidence was introduced in State v. Rowley, supra, State v. Dunklebarger, 206 Iowa 971, 221 N. W. 592; State v. Sonner, 253 Mo. 440, 161 S. W. 723; State v. Smith, 336 Mo. 126, 76 S. W. 2d 1077; State v. Montifoire, 95 Vt. 508, 116 A. 77; 1 C. J. S., Abortion, 338; Reininghaus v. Merchants Life Assn., 116 Iowa 364, 89 N. W. 1113.

We hold there was no error in the court's ruling.

X. Appellant urges as error the overruling of an objection to a question propounded by the State to Dr. Thornell and one of like import to Dr. Collins. The question propounded to each of such medical witnesses was: "Doctor, from your experience as a physician and surgeon, specializing in obstetrics and pediatrics, what is the standard and accepted and recommended treatment in a case of a threatened miscarriage?"

The objection urged was that the same was incompetent as well as not proper rebuttal. Appellant cites no authority to support such claim. Appellant as a witness testified as to what was the proper practice to be followed in case of a threatened miscarriage and claimed that in treating Marion Blythe he followed such practice. The questions propounded to Drs. Thornell and Collins were offered to show the standard and accepted treatment in such cases and were offered to rebut appellant's testimony as above set out. It was properly received in rebuttal as it threw light on the issue raised and was competent for that purpose.

We have gone over the record with care and considered all error properly raised. We hold that there was a jury question and that there was no prejudicial error in the admission of evidence or in the instructions, both refused and given, and the case is affirmed.—Affirmed.

All JUSTICES concur.